EASTERN DIST.
*May,* 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

## M'DONOUGH *vs.* GRAVIER'S CURATOR.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Where the purchaser at a sale under execution shows a judgment, writ of execution, and sale to him under them, made by the proper officer, all previous proceedings by the latter are presumed to have been correctly made; that is, in relation to the formalities required by law. This presumption is *omnia recte acta.* But this, like all other presumptions, yields to contrary proof.

In forced alienations of property, all the formalities required by law, must be strictly fulfilled to give validity to the sale.

Persons having an interest to cause the alienation of property at sheriff's or other forced sale, to be annulled for want of the legal formalities in making it, may claim judicially the rescission of such sale.

In forced alienations, the property must be described with minuteness and accuracy, so that it can be appraised with such minuteness as to ascertain its value, and be sold together, or separately, to the best advantage.

So, where a sheriff seized property in execution, and described it as " *land lying between St. Paul and Bertrand-streets, in the city of New Orleans,*" and the evidence showed that the ground between these streets had previously been laid off into lots and squares : *Held,* that this description was insufficient, and that the sale under it gave no title to the purchaser.

According to the *article* 702 of the *Code of Practice,* the sheriff is required to specify the object seized and sold, which must be done in the *return on his writ,* so as to distinguish and specify one object from another,

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

Real or immoveable property, situated in New-Orleans, must be advertised in the newspapers in the English and French languages for thirty days, *excluding* the day *when the advertisement* commenced, and the *day of sale*, so that thirty clear days may elapse between. The want of this formality is a ground of nullity of the sale.

This is a petitory action. The plaintiff alleges, that he is the owner and proprietor of a large piece of property in the city of New-Orleans; and that about the 11th November 1834, the curator of the estate of the late John Gravier, obtained an order from the Court of Probates for the parish and city of New-Orleans, to sell said property in lots, according to a plan and advertisement published in the gazettes of the city; the sale to take place the 30th January, 1835.

The plaintiff further alleges that he purchased said property at sheriff's sale, made by George W. Morgan, sheriff of the parish of New-Orleans, as appears by the said sheriff's deed, dated 30th April, 1830. He further shows that the curator of Gravier's estate has placed said property in an inventory as belonging thereto, and obtained the aforesaid order of sale, to his great injury and damage one thousand dollars. He prays that the property be decreed to belong to him, and that he have judgment for his damages against the curator for the illegal disturbance of his right and possession thereof.

The defendant put in an answer and petition in reconvention, and denied that the plaintiff had any right or title to the property in question. He avers, that the sheriff's sale of April 30, 1830, which the plaintiff sets up as the basis of his title and claim to this property is null and void, as being defective both in form and substance, and as having been procured by the misrepresentations and other fraudulent means made use of by the plaintiff himself, by which he purchased for ninety dollars, property then worth eight thousand dollars. Various circumstances, facts and proceedings are then detailed to show the manner and circumstances under which the property in dispute had been sold, and its actual situation and value before and since the said sale. The answer concludes with a prayer that the sale of April 30,

1830, be cancelled and annulled; that the plaintiff be forever enjoined from asserting any title to the property; and that he pay Gravier's estate ten thousand dollars in damages, with costs of suit.

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

The evidence and facts of this case show, that in April, 1824, judgment was rendered in the Probate Court for the parish and city of New-Orleans, against John Gravier and John Poumairat, as executors of B. Lafon, for twenty-two thousand and seventy-nine dollars. This judgment seems at first to have been considered *de bonis testatoris*, but was afterwards changed into a judgment *de bonis propriis*. Execution issued on this and several other judgments, of like character, when Gravier surrendered a number of squares and lots of ground, which he deemed sufficient to satisfy the demands against him. These squares and lots were laid down and described on a plan made by himself, which is in evidence in this case. It embraces thirty-two squares or lots of ground, in the faubourg St. Mary, and extends from between two streets running perpendicularly to the river, the upper called Hevia and the lower Common-street, and two other streets running parallel with the river, the one nearest to the river called St. Paul-street, and the one nearest to the swamp called Bolivar-street. A number of the lots and squares thus surrendered and designated on Gravier's plan, were sold under these executions; while others were reserved for the benefit of the proprietor, under various pretences. When the purchasers, and among them the present plaintiff, applied to be put in possession of their lots, it was found impracticable, owing to the incorrectness of the *plan* by which they were sold.

Under these circumstances and difficulties, it was agreed among the purchasers, at the suggestion of the city surveyor, to make a new plan, running the streets through towards the swamp, according to their proper direction; and to make up for the deficiency of lots which should be found to exist. The plan was extended back into the swamp, and one additional street annexed, called Bertrand-street. The addition of this street gave another tier or range of four more

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

squares. Gravier, it seems, gave no positive assent to this alteration; but after the new plan was made, he refused to join in and sanction it. The purchasers at the sheriff's sale of December, 1824, were left in much uncertainty as to their titles and boundaries.

The curator of Gravier's estate now alleges, that it was with a view of divesting Gravier of all his right, title and interest to the ground that belonged to him according to this new plan, that another execution was issued on the original judgment of 1824 against him. This execution issued the 6th June, 1829, returnable the first Monday of August, 1829. It was levied on all the right and title of Gravier to property within certain boundaries, embracing in part that included in the new plan. This execution was returned, "no sale for want of time." The execution under which the sale now in contest was made, issued the 13th March, 1830. On it, the sheriff made the following endorsement and return:

"Received, Saturday, the 13th March, 1830. Seized the right, title and interest of John Gravier to the lands lying between St. Paul and Bertrand-streets, in the city of New-Orleans, and sold on the *fifteenth of April*, 1830, to John M'Donough for the sum of..................................$90 00
Deduct costs of court and sheriff's fees.............. 33 50
                                                                                    ————
                                                                                    $56 50
"Balance of fifty six-dollars and fifty cents paid to plaintiff as per receipt book. Returned 17th May, 1830.

                       G. W. MORGAN, Sheriff."

The sheriff's advertisement describing the property, and notifying the terms, conditions and time of the sale, is as follows:

"By virtue of a writ of *fieri facias*, to me directed, will be exposed for sale at the New Exchange Coffee House, corner of Chartres and St. Louis streets, on Monday, the 19th day of April next at one o'clock, P. M., the right and interest of

John Gravier, whatsoever the same may be to lands lying in the rear of suburb St. Mary, within the following bounds, to wit : in front, or to the east, by the line of St. Paul-street, in its whole length from Mr. Perilliat's line above, to Common-street below, on the upper side ; or to the south by Mr Peril-liat's line, running back from its intersection with the said St. Paul-street, or place of beginning, at its intersection with Bertrand-street, on the lower side, or to the north by Common street, from its intersection with said St. Paul street, and a line parallel with said Common-street, continued until it inter-sects the line of Bertrand-street, and in the rear, or to the west by Bertrand-street, in its whole length, seized in the above suit.                 G. W. MORGAN,

Sheriff."

At the sale, John M'Donough, the present plaintiff, became the purchaser for the sum of ninety dollars.

The evidence shows that the boundary specified in the foregoing advertisement, contained a large number of lots belonging to other proprietors than Gravier ; and that no definite account of the number owned by him was ever given.

It also appeared in evidence that the advertisement of this property was first published in English in the Louisiana Advertiser the 16th, and in French on the 24th March, 1830. It was also published in the New-Orleans Argus in English the 18th, and in French on the 19th of March, 1830.   The sale took place the 15th April, according to the sheriff's return, and on the 19th, according to his deed made to the plaintiff, which is itself dated the 30th April, 1830.   The advertisement states that the sale is to be made on the 19th April, 1830.   The law provides that sales of immoveables, slaves and steam-boats can be made *only thirty days after the first* notice has been given.   *Code of Practice, article* 670.

Advertisements for the sale of property in the city of New-Orleans, must be inserted three times in two news-papers in the English and French languages.   *Code of Practice,* 689.

Eastern Dist.
May, 1836.

M'DONOUGH
vs.
GRAVIER'S
CURATOR.

The district judge was of opinion that the proceedings in relation to the sale were irregular, and that the formalities of law were not complied with.

Judgment was given for the defendant with costs. The plaintiff appealed.

*Mazureau, Grymes* and *Gray,* for the plaintiff.

1. The insufficiency of the advertisements in the newspapers, is the first subject of complaint on the part of the defendant. Upon an inspection of all the preceding cases decided by this court, it will be discovered that its decision has been based upon the total absence of notice, the want of, or a misrecital of the judgment under which the execution issued, or the entire neglect of something enjoined by the law to precede the sale. The articles 669 and 670, of the Code of Practice, are to govern us in deciding this point. It appears from the files of the newspapers in evidence, that the advertisement of the land in dispute appeared in one, in English and French, on the 17th and 19th days of March, in the other in English, on the 16th day of the same month, and in English and French on the 19th of March, and was continued afterwards, in both papers and both languages, almost every day until the day of sale. The article 670 of the Code of Practice, says: " The sale of moveable effects can only be made ten days after the first notice which has been given, and that of slaves, ships, steam-boats, and immoveables only thirty days after the same notice." 'Now, let the words " first notice that has been given," used in this article, refer to what it will, it is clear from the evidence of the newspapers, that the sale took place after the lapse of time required.

2. If we begin to count from the 16th day of March, when it had appeared in one of the papers in both languages, then thirty-three days had elapsed; if we begin from the 19th day of March, at which time it had appeared in both the newspapers, in both the languages, March having thirty-one days, there was consequently twelve days in that month, exclusive of the 19th, and nineteen days in April, which

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

makes thirty-one, so that the sale took place on the 31st day after the first notice, counting from the very latest period; and supposing the "first notice" mentioned in the Code, to mean a publication in two newspapers in two languages, or thirty full days had intervened exclusive of the day on which the first notice was complete, and of that on which the sale took place.

3. It is secondly alleged that the property was not sufficiently described. No legislative provision or direction can be invoked on this point. The code is silent. The description is as accurate as it was possible to make it. It is described in the advertisements and in the act of sale to the plaintiff, as being situated in the rear of suburb St. Mary, and comprised within lines and boundaries well established and well known : known to the public, for they figure on all the plans of the faubourg : known well to Gravier, for he made and established them. It was hardly possible to give any other description, for it results from the testimony on record, that the property of Gravier in that quarter had been placed in such a situation by him that no person could tell what was his, or what rights he had on any, or all of it ; if it could not be seized and sold under this description, then he was insured success in his intention to abstract it from the pursuit of his creditors, and to annul this sale and restore him the property will be to reward him for his constant endeavors to defraud his creditors, and evade the performance of his most sacred obligations, even by the commission of forgery and other crimes.

4. It is said, thirdly, that the sale does not correspond with the seizure. The document referred to, to establish this, is the sheriff's return on the execution under which he made the sale, to be found on the back of the writ among the original documents brought up from the Court of Probates. The notice in the newspapers, the sheriff's deed to the plaintiff, and every other document in the cause, concur in the description of the property, and prove the sale to have taken place on the 19th of April. The sheriff's return is dated the 17th day of May, 1830, and purports, as in the nature of

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

things it must be, a narrative of his proceedings under the writ. It does not give so minute and accurate a description of the property as the other documents, and it states the sale to have taken place on the 15th of April; but it is difficult to conceive how the relation or intended relation of facts and circumstances, made a month after they happened, can control and falsify circumstances and events noted and elicited at the time they happened, clearly proved by uncontradicted testimony, carrying with them internal evidence of their truth, and consummated by a public and authentic act, which the law declares shall be full proof of what it contains.

5. Fourthly, it is said the property did not produce an excess over and above the mortgages upon it ; and that part of the certificate of the recorder of mortgages in evidence, to be found in the record, is relied upon as proof of this fact. In answer to this, we say : 1st. This is not an absolute nullity of which the debtor from whom the land is seized can take advantage of for his own benefit ; it is a matter which concerns the mortgagee, and which he may enforce against us if his mortgage has not been satisfied. 2d. That by the sheriff's deed to the plaintiff, it appears that he purchased the property subject to all the mortgages, and that consequently the price he paid into the sheriff's hands was substantially and truly so much over and above all the mortgages, and the law in this matter being substantially satisfied, the mere manner and form of doing it cannot work an absolute nullity. 3d. That when it is said that if property does not bring more than the mortgages existing on it, there is no sale, we must be understood to mean mortgages admitted, or proved to exist, truly and really, and when their existence or reality is denied, they must be proved contradictorily with him who denies them, and by legal and conclusive testimony.

6. The fifth nullity alleged on the part of the defendant, is, that the execution is not in the French language, article 626 of the Code of Practice is relied on. We take the provisions of this article to be merely directory, and to carry with it no absolute nullity unless taken advantage of at the time. The code makes the same provision with respect to petitions

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

and other judicial proceedings, and the judgment, &c., is not a nullity for this reason. *Code of Practice*, 605, 6, 7. This is only necessary where the maternal language of the defendant is French; there is no evidence in the record that the maternal language of Gravier was French.

*L. Janin* and *Deny*, for the defendant.

1. A plain statement of the nature of the plaintiff's claim, suffices to show, that it is utterly inadmissible. He claims a number of lots and squares in the rear of faubourg St. Mary, under a sheriff's sale of the 19th of April, 1830, in which the property is described as any property of John Gravier, within the space of ground, bounded in front by St. Paul-street, in the rear by Bertrand-street, on the upper side by Perilliat's line, and on the lower side by the prolongation of Common-street. That space of ground was at the time of the sale, divided into lots and squares, and embraced about thirty-six squares. The whole had formerly belonged to Gravier; by far the greater part, however, had been sold previous to 1830. It was town property, and what still belonged to Gravier might have been seized and sold, but ought to have been described as town property. The description was such, that nobody could know what property, or whether any property at all was offered for sale. It is proved that neither the appraisers nor the sheriff and deputy sheriff knew what property they were appraising or selling, nor could they know it under such a description. The plaintiff was the only person who knew what property Gravier still owned within the above described limits; it is, therefore, not astonishing that nobody bid against him, and that he could buy it in for ninety dollars. Under this sale he now pretends to have acquired three entire squares and the greater part of four other squares, besides several other irregular parcels of ground. The evidence establishes that, already in 1830 this property was worth at least eight thousand dollars.

2. It is unquestionably one of the most material requisites of a forced sale, that the property should be described with

EASTERN DIST.
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

reasonable certainty, in order to convey a clear idea of what is offered for sale. *Code of Practice*, 676, 702. 1 *Louisiana Reports*, 43, *and the authorities there cited by the plaintiff's counsel.* 4 *Peters's Reports*, 362. 7 *Louisiana Reports*, 409. 1 *Louisiana Reports*, 491.

3. The sheriff can only sell what he has seized, and in this case the sale does not correspond with the seizure. The sheriff's return differs from the description given of the property in the advertisement and deed of sale. 1 *Louisiana Reports*, 44.

4. The property was not advertised according to law. *Code of Practice*, 654, 655, 667 to 669.

5. The writ of *fieri facias*, issued in the English language only. It is in proof that Gravier was a Frenchman, and did not speak the English language. *Code of Practice*, 625, 626, 700–1. 3 *Louisiana Reports*, 476.

6. A part of the property was specially mortgaged. As it did not bring the amount of these mortgages, there was no sale. *Code of Practice*, 683, 684. 4 *Martin*, *N. S.*, 154. 7 *Ibid.*, *N. S.*, 382.

7. It is fully proved that the plaintiff is not an innocent purchaser, and that this sale is his work, brought about by improper means. He procured it to be made, he gave the description of the property, he well knew, and knew alone what property Gravier had behind St. Paul-street, and carefully concealed his knowledge from others, and he kept others from bidding by pretending to purchase only with a view to settle the boundaries of the property owned by him, and many other individuals behind St. Paul-street.

8. We will now add some remarks on the plaintiff's opening brief. The statement of the several dates of advertising in the newspapers is incorrect. The advertisement of sale of 1830, appeared in French in the Louisiana Advertiser for the first time, the 24th March.

9. In the third point, plaintiff's counsel assert that the property was described according to plans known well to Gravier, for he made and established them. This is contradicted

by the testimony of Bringier, who proves that Gravier did <span style="float:right">EASTERN DIST.</span>
not know *Bertrand*-street one of the boundaries. <span style="float:right">*May*, 1836.</span>

10. The notice of the sale, as published in French, is <span style="float:right">M'DONOUGH</span>
unintelligible, and amounts to nothing at all. <span style="float:right">*vs.*<br>GRAVIER'S</span>

11. Lastly, it is asserted that there is no evidence to show <span style="float:right">CURATOR.</span>
that the maternal language of Gravier, the defendant in the
sale, was French.   This is fully proved by testimony in the
record.

*Mathews, J.*, delivered the opinion of the court.

This suit is brought by the plaintiff, to prevent the
defendant from proceeding to sell certain property which he
had caused to be inventoried and advertised for sale, as
curator of the estate of John Gravier, deceased; and to
recover damages from the defendant on account of his acts,
by which an attempt is made to sell property which the
plaintiff alleges to belong to him.   The answer contains a
denial of any right or title in the claimant, and allegations
that the pretended sheriff's sale under which he claims, is
null and void; and prays that it may be rescinded, &c.
Judgment being rendered in favor of the defendant, the
plaintiff appealed.

The facts of the case, as established by the evidence,
show, that Gravier, the intestate, who was the owner of the
land in the rear of the faubourg St. Mary, laid out a part of
it into squares and lots for buildings, intending them to be
annexed as city property to the faubourg which had been
previously established in front, &c.; that during his lifetime
he sold many of those squares and lots to different persons,
in conformity with a plan which he had caused to be made.
This plan being considered imperfect, as not designating
with precision the various parcels of ground sold to the
different purchasers, underwent changes by the consent of
these parties mutually given, until a plan was finally made
and adopted in 1831 ; in which the defendant acquiesces, as
shown by his answer.

Gravier was indebted in large sums to judgment creditors,
whose claims were not fully satisfied, and on the 13th day of

EASTERN DIST.
May, 1836.
───────────
M'DONOUGH
vs.
GRAVIER'S
CURATOR.
March, 1830, at which time an execution issued against his property on one of those judgments. Under this writ the sheriff seized, as appears by his return, which is uncontradicted, " the right, title and interest of John Gravier to the lands lying between St. Paul and Bertrand streets, in the city of New-Orleans, and sold on the 15th day of April, 1830, to John M'Donough, for the sum of ninety dollars: deduct costs of court and sheriff's fees thirty-three dollars and fifty cents : balance of fifty-six dollars and fifty cents, paid to plaintiff, as per receipt book. Returned the 17th of May, 1830.   G. W. Morgan, sheriff."

In addition to this return, made by the sheriff, a deed from that officer is produced in evidence, dated on the 30th April, 1830, reciting the sale as having been made on the 19th of that month.

It is seen from the recital of these acts and their dates, that the plaintiff bought the premises in dispute previous to the adoption of the plan of 1831.

The validity of this sale is attacked, on the ground of omissions on the part of the sheriff to fulfil the formalities required by law in the forced alienation of property under judgment and execution. Another cause of nullity is alleged by the defendant, said to result from the concealment and fraud of the plaintiff, in procuring the seizure and sale of Gravier's property. But the opinion which we have formed on the alleged informalities in the sale, renders it unnecessary to examine this point.

We consider it now as an established doctrine of our jurisprudence, in relation to sales under execution, that when a purchaser shows a judgment and writ of execution and sale to him under them, made by the proper officer, all previous proceedings by the latter are presumed to have been correctly made ; that is, in relation to the formalities required by law, the presumption is *omnia recte acta*.   But this presumption, like all others of facts, must yield to proof contrary to it.

The points of the defendant present two principal grounds of nullity in the sheriff's sale to the plaintiff, arising out of the omissions and misconduct of that officer : 1st. A want of

Where the purchaser at a sale under execution shows a judgment, writ of execution, and sale to him under them, made by the proper officer, all previous proceedings by the latter, are presumed to have been correctly made, that is, in relation to the formalities required by law. This presumption is *omnia recte acta*; but this, like all other presumptions, yields to contrary proof.

proper description of the property seized ; and, 2d. Neglect
to advertise it in the manner and during the length of time
required by law.   Before examining the evidence in support
of these points, and applying the law to them, it is proper to
premise that we have always adopted as a maxim, that in
forced alienations of property, all formalities required by law
must be strictly fulfilled to give validity to such alienations.
From the adoption of this maxim it follows, that all persons
having an interest to have such alienations annulled, may
claim judicially a rescission of the sales by which they are
made.

The description of the property seized in the present
instance, viewed in the light of city property, laid out into
squares and lots, is truly vague and indefinite, and the
evidence shows, that neither the sheriff or the appraisers
could possibly have had any knowledge of its extent or value.
It is true, that the Code of Practice does not point out in
express terms, the -specific manner in which property seized
in execution shall be- described.  But certainly, a description
so totally void of precision as not to enable the appraisers to
find the property which they are called on to estimate, or in
any other manner to give a clue to its value, would be
contrary to the provisions of our laws, intended to protect
unfortunate debtors against all useless severity, by which
their property might be taken from them, under color of law,
at a cruel sacrifice of their interest, by a forced sale of it,
indefinitely below its value.   Although the mode of pro-
ceeding in seizures and sales under execution, in relation to
a description of the property seized, is not expressly directed
by the code, yet it results from irresistible implication
derived from the articles 676 and 702, that property thus
seized must be described much more specifically, and with
considerable and much greater precision, and certainly more
than was done in the present instance.   The first article
cited provides, that " slaves must be appraised either by the
head or by families, and other effects must be appraised with
such minuteness that they may be sold together or separately
to the best advantage of the debtor, as he may direct.   All

EASTERN DIST
*May*, 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

In forced
alienations of
property, all the
formalities re-
quired by law
must be strictly
fulfilled, to give
validity to the
sale.

Persons having
an interest to
cause the aliena-
tion of property
at sheriff's or
other forced sale
to be annulled,
for want of the
legal formalities
in making it,
may claim judi-
cially the rescis-
sion of such sale.

In forced
alienations, the
property must
be described
with minuteness
and accuracy, so
that it can be
appraised with
such minuteness
as to ascertain
its value, and
be sold together
or separately to
the best advan-
tage.

EASTERN DIST.
May, 1836.

M'DONOUGH
vs.
GRAVIER'S
CURATOR.

So, where a sheriff seized property in execution, and described it as "land lying between St. Paul and Bertrand-streets, in the city of New-Orleans," and the evidence showed that the ground between these streets had previously been laid off into lots and squares: *Held*, that this description was insufficient, and that the sale under it gave no title to the purchaser.

According to the article 702, of the Code of Practice, the sheriff is required to specify the object seized and sold, which must be done in the *return on his writ*, so as to distinguish and specify one object from another.

property seized in execution must be appraised; and we find the law imperative that it must be so appraised, when made up of different and distinct parcels, that they may be sold together or separately, at the option of the debtor.

The sheriff returns in the present instance, that he seized property in the city of New-Orleans, and other evidence in the cause shows that a considerable part, if not all the land seized, was, previous to the seizure, laid out in squares and lots, bounded by certain named streets. He does not, however, specify any of those squares or lots, and consequently put it out of his power, and that of the appraisers, to comply with the requisites of the article of the *Code of Practice*, now being interpreted. According to the article 702, the sheriff is obliged to specify the object seized and sold; and this must be done in his return on the writ. If he seizes more than one object, according to the spirit of article 676, he must specify each and every one seized. The seizure made in this case was really of many distinct objects, if one square or lot in a town may be distinguished from another, either as to locality or in point of value, a proposition which we presume will not be denied. The adjudged cases cited on the part of the defendant, in support of the point which has now been investigated, are not precisely similar to the present, but have a very evident analogy. See 1 *Louisiana Reports*, 43. 4 *Peters*, 362. 7 *Louisiana Reports*, 409, and 1 *Ibid.*, 491. But supposing our reasoning on this point to be feeble and inconclusive, which we are by no means ready to admit, still the second point which we purpose to discuss, does in our view, incontrovertibly support the ground assumed by the defendant; that is, that the sheriff omitted or neglected to advertise the property seized, the full length of time prescribed by law. Being real estate, he was bound to advertise it, in both the English and French languages, for the space of thirty days before the sale. We have already transcribed the return of the officer on the writ of execution, in which he states that the property seized was sold on the 15th of April 1830. This return we stated to be uncontradicted, and we hold this opinion not-

withstanding the discrepancy of dates between the sheriff's deed and his return; considering the sale and return into court as the real evidence of title in the plaintiff, if any he has, and superior to that of the act of sale, which it must control, in the event of disagreement between the adjudication and the sheriff's deed. The latter is a matter entirely between the officer and the purchaser, the former a solemn and indispensable performance of duty, and addressed directly to the court in which it should become a record not to be contradicted by any thing *dehors*. In support of this opinion, see article 695 of the Code of Practice, wherein it is positively declared that the act of sale adds nothing to the force and effect of the adjudication, &c. If we take the 16th March as the commencement of the advertisements, (the property having been seized on the 13th) and the day of adjudication to be the 15th of April, according to the sheriff's return, thirty days did not elapse between the advertisement and the day of sale, unless both those days be included in the calculation, which is contrary to established practice in such cases, and which gives way only to positive law. The expressions in the article 670 of the Code of Practice, do not impugn this usual mode of calculation which would exclude either the day of sale or the day when the advertisement commenced. For it declares that sales of immoveables shall take place only *after* a notice by advertisement of thirty days. *After thirty days*, cannot mean *within* that period, which would take place in the present instance if both the days of advertising and sale be included in the calculation of time. The law, however, requires property situated in the place where this was when seized by the sheriff, to be advertised both in the English and French languages. The advertisement in French is however not shown to have had place in any newspaper or gazette published in the city before the 19th of March: consequently, the time of advertising required by law is greatly deficient, according to the view of the case which we have taken.

But it is contended that the neglect and omissions of the sheriff in the performance of his duties ought not to prejudice the plaintiff, who is stated to be a purchaser in good faith;

EASTERN DIST.
*May,* 1836.

M'DONOUGH
*vs.*
GRAVIER'S
CURATOR.

Real or immoveable property, situated in New-Orleans, must be advertised in the newspapers, in the English and French languages, for thirty days, excluding the day *when the advertisement commenced,* and the *day of sale,* so that thirty clear days may elapse between. The want of this formality is a ground of nullity of the sale.

ASTERN DIST.
May, 1836.

M'DONOUGH
vs.
GRAVIER'S
CURATOR.

and that the causes of nullity relied on by the defendant are not supported by the general principles of our jurisprudence. In support of the doctrine thus assumed, we are referred to the commentary of Toullier on the civil-law of France, particularly, to certain numbers or articles found in the 7th volume of this work under the head of extinction of obligations, from No. 479 to 603. We have attentively examined the authority thus cited, not without pleasure, derived from the force and perspicuity of the reasoning of the author, wherever he treats of the nullities of contracts. He divides the subject into acts done contrary to law, and omissions to pursue formalities required by its provisions. This last branch of the subject is examined according to the distinction made by the doctors of the civil law, between substantial and accidental formalities. The first general rule in relation to them is, that when the formality prescribed is founded on natural equity, it is said to be substantial, and its omission carries with it nullity of the act. The author criticises this rule in relation to voluntary and consensual contracts, and perhaps the exceptions to its validity which he imagines, would not apply to judicial proceedings, under which forced alienations of property take place. It is, however, in our opinion, of the essence of justice and natural equity, that when a forced sale of a debtor's property is made under legal proceedings, that it should not be sacrificed for less than its value, or at least that portion of it intended to be secured by a fair appraisement. In this case, the pretended appraisement appears to us to have been a mere mockery of justice, as neither the officer who seized, or the appraisers, had any means of knowing or finding out the value of the property to be appreciated. Should we admit the full force of Toullier's reasoning on the subject of nullities, still exceptions to the rules which he thinks ought to be established would result (it is believed) from the texts of our codes, and from the leading principles of our jurisprudence.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.