ARVELO ET AL., PLAINTIFFS AND APPELLANTS, *v.* BANCO
TERRITORIAL Y AGRÍCOLA, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 1, in
an Action for Damages.

No. 1365.—Decided July 27, 1917.

DAMAGES — FORECLOSURE — DEMAND FOR PAYMENT — DEATH OF MORTGAGOR —
HEIRS.—Under article 128 of the Mortgage Law and article 171 of the
Regulations for its execution, the demand for payment should be made
upon the owner of the mortgaged property if he resides in the place where
the estate is located or his residence is known; but when the owner dies
before the foreclosure proceeding is brought the demand for payment should
not be made upon the person in charge of the property in any legal ca-
pacity, but upon the heirs, who continue the personality of the deceased
and substitute him in all his transferrable rights, both active and passive,
and such personal demand on the heirs is excusable only when they do not
reside in the place where the mortgaged property is situated and their
residence is unknown.

ID.—ID.—ID.—WIDOW OF DEBTOR.—Failing a demand for payment upon the heirs
in a foreclosure proceeding, a demand upon the widow of the debtor who

is in charge of the mortgaged property is not valid when the demand is not made upon her as the attorney in fact of adult children or the representative of minor children.

ID.—ID.—SUCCESSION—HEIRS—MEMBERS OF SUCCESSION—PARTIES.—Under our law a succession is not a juridical person. A succession may be a party plaintiff or party defendant only after it has been individualized by stating the names of those who compose it. It is not a legal entity distinct from the heirs. The heirs form the succession and they should appear as plaintiffs or defendants.

ID.—ID.—ID.—SALE OF PROPERTY—PUBLICATION OF NOTICE—VOID SALE.—The formalities required by article 128 of the Mortgage Law and article 171 of its Regulations for advertising the first sale should be complied with also in subsequent sales; therefore when less than the time fixed by law has elapsed between the first publication of notice of sale and the sale itself, the conveyance of the mortgaged property to the creditor in payment of the debt is void. The present case is distinguished from that of *Henna et al.* v. *Saurí & Subirá,* 22 P. R. R. 776, for the position of a junior mortgagee is not the same as that of the principal debtor.

ID.—ID.—NOTICE OF SALE—PUBLICATION OF NOTICE.—Article 172 of the Regulations for the execution of the Mortgage Law does not leave the publication of notices in the public places referred to or in the *Gazette* of the Island to the option of the creditor, for this would be contrary to the general provision of paragraph 3 of article 123 of the Mortgage Law, which expressly orders that thirty days after demand for payment has been made the notice shall be published in the *Gazette* of the Island.

ID.—ID.—EJECTMENT.—In an action for damages based on the nullity of a foreclosure proceeding by virtue of which the property was conveyed to the foreclosing mortgagee (defendant herein) because of the legal disability of the plaintiff to bring any action against the actual possessor for the reason that the latter had acquired it in good faith from the defendant without knowledge of such nullity, it is sufficient to allege these facts and those upon which the nullity is based; for the plaintiff was not bound first to ask for a declaration of the nullity in order to be able to claim damages, nor was he obliged to ask for said nullity in case he could bring suit in ejectment against the defendant in regard to the property sold.

ID.—ID.—PRESCRIPTION.—For the reasons stated in the treatment of a similar question in the case of *Carmona et al.* v. *Cuesta,* 20 P. R. R. 215, and ratified in 23 P. R. R. 636, the plea of prescription in this case, based on paragraph 2 of article 1968 of the Spanish Civil Code, is overruled.

ID.—ID.—STATEMENT OF CASE.—The fact that the statement of the case contains only the evidence introduced at the trial regarding the questions involved in the judgment and the appeal therefrom and does not include the evidence introduced with regard to damages, is not a legal ground for affirming the judgment appealed from in view of the fact that the grounds alleged as causing such damages exist. It is incumbent upon the lower court to determine and fix the damages for which indemnity is sought.

The facts are stated in the opinion.

*Mr. José Tous Soto* for the appellants.

*Mr. Juan de Guzmán Benítez* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

The appeal submitted for our reconsideration was taken by the plaintiffs from a judgment rendered by the District Court of San Juan, Section 1, on March 15, 1915, dismissing the complaint and the counterclaim with costs against the plaintiffs.

In the said complaint the plaintiffs pray for judgment against the defendant, the Banco Territorial y Agrícola de Puerto Rico, for the sum of $70,000 as damages for the value of the property conveyed to the said banking corporation in a foreclosure proceeding brought by it against the Succession of Hilario Arvelo and the rents yielded from September 26, 1898, to the date of the complaint, September 7, 1913, together with all the costs, expenses and fees, and that plaintiffs be granted any other relief consistent with the allegations of their complaint.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and also that the action was barred by limitation, according to articles 1301 and 1968 of the Spanish Civil Code, corresponding to section 1268 and subdivision 2 of section 1869 of the Revised Civil Code. In its answer to the complaint, admitting some of its allegations and denying and rectifying others, the defendant set up a counterclaim, praying that in case the complaint should be sustained and judgment rendered against it for any amount, the plaintiffs be adjudged to pay to the Banco Territorial y Agrícola the sum of $9,965.80 as principal and $13,955.94 as interest accrued to June 30, 1913, and additional interest on the said principal at the rate of 9 per cent per annum until the date of payment, together with $88.46 as commission on advance payment and $361.22 for the costs incurred by the bank in the foreclosure proceeding, on the condition that pending payment to the Banco Territorial y Agrícola of the amounts

claimed in the counterclaim, the plaintiffs shall not be entitled to receive, and the bank shall not be obliged to pay, the amounts, if any, which the court may order to be paid to the plaintiffs by reason of their complaint.

From the pleadings of the parties, together with the evidence shown by the record to have been admitted at the trial, the following facts appear:

1. By a public deed of June 3, 1896, Hilario Arvelo y Ríos created a voluntary mortgage in favor of the Banco Territorial y Agrícola upon a certain rural property in the ward of Jayuya of the municipality of Utuado, recorded in his name in the registry of property, to secure a debt of 15,000 provincial *pesos* which he acknowledged that he owed to the Banco Territorial y Agrícola and agreed to pay under certain conditions.

2. When the said mortgage debt became due the Banco Territorial y Agrícola de Puerto Rico instituted a summary foreclosure proceeding under the Mortgage Law against the Succession of Hilario Arvelo in the court of first instance of Utuado to recover the amount due, without alleging in the complaint the death of Hilario Arvelo or who were his heirs or whether they had accepted the inheritance, praying that demand for payment be made upon the Succession of Hilario Arvelo Ríos, which the court sustained, ordering that demand be made upon the Succession of Hilario Arvelo Ríos or the person in charge of the mortgaged property in any legal capacity.

3. That the demand so ordered was executed by the clerk of the court in the following manner:

"On February 23, 1898, accompanied by the constable, Miguel Arnau, I went to the residence of the Succession of Hilario Arvelo Ríos in the ward of Jayuya and finding there the widow of Arvelo Ríos, who said that her name was Florentina Vega and that she was in charge of the property referred to in this proceeding, I demanded that she pay the 15,547.94 *pesos* claimed by the Banco Territorial y Agrícola de Puerto Rico, plus 3,000 *pesos* as interest and costs, within thirty days, and warned her that unless she did so the mort-

gaged property would be sold at auction, at the same time deliver-
ing to her the copy presented by Solicitor Casalduc. She did not
sign because she said that she could not write, and at her request
Nemesio Arvelo signed for her after the constable had signed be-
fore me, to which I certify. Miguel Arnau. Nemesio Arvelo. Car-
los Buitrago.''

The widow of Arvelo was known by the names of Floren-
tina, Flores, and Sinforiana.

4. Payment not having been made within the time fixed,
the bank moved that the mortgaged property be sold at auc-
tion and the court sustained the motion, entering an order
on March 28, 1898, for the sale of the property on April
25 following. On the said twenty-eighth day of March notice
of the sale was issued. A copy was posted publicly in the
customary place in the court of Utuado and another copy was
delivered to the bank's solicitor for publication in the *Gazette*
and was published therein in the issues of April 5, 6 and
7, 1898. The first sale was abandoned because no bidder
appeared.

5. On motion of the mortgagee, on May 23, 1898, the court
ordered a second sale to be held on June 20, 1898, and re-
duced the valuation of the property 25 per cent. On the date
of the court's order notice of the sale was issued, one copy
being posted on the door of the courthouse and another de-
livered to the solicitor of the bank for publication in the
*Gazette,* and it appeared in its issues of May 31 and June
1 and 2, 1898. The second sale also failed to take place for
the lack of a bidder.

6. On motion of the mortgagee and by an order of July
8, 1898, the court set a third and final sale for August 4 at
a minimum upset price of the amounts secured by the mort-
gaged property. On the said eighth day of July notice of
the sale was issued as ordered, two copies being posted in
the customary public places and another delivered to the
solicitor of the mortgagee for publication in the *Official
Gazette,* in which it was published in the issues of the seven-

teenth, nineteenth and twenty-first of the same month of July. This third sale also failed because there was no bidder.

7. On September 20, 1898, the mortgagee bank moved that the mortgaged property be conveyed to it in payment of the debt claimed, and on the twenty-sixth the court ordered that the said property be conveyed to the bank for the sum of 15,546.94 provincial *pesos*. Notice of this was given to the widow of Hilario Arvelo in the ward of Jayuya, at the residence of the Succession of Arvelo, as stated by the clerk who served the notice by reading the order and delivering a copy of it to the widow, who did not sign because she said she did not know how to write, Ramón Arvelo signing for her at her request.

8. On motion of the grantee bank and by order of the court of Utuado the constable of the said court, accompanied by the clerk, went upon the said property on March 10, 1899, and delivered possession of it to the bank, which was represented in that act by Ramón Arvelo.

9. The Banco Territorial y Agrícola recorded its title to the mortgaged property in the registry, the said record setting out that demand for payment had been made upon the Succession of Arvelo, but the dates on which the notices of each sale were published were not stated.

10. By a deed of June 30, 1906, the Banco Territorial y Agrícola sold the said property to Carlos López de Tord for the sum of $13,000, of which $1,300 was paid in cash and the balance was to be paid within ten years, with interest at 9 per cent per annum. This deed of purchase and sale was recorded in the registry.

11. Hilario Arvelo was twice married; first to Catalina Vega, with whom he contracted matrimony on February 20, 1866, and who bore him two children, Concepción and Evarista. Catalina Vega died on December 30, 1890, and he married Sinforiana Vega on September 9, 1891, who bore him three daughters named Virginia, Catalina and Juana Rosenda. Hilario Arvelo died on December 26, 1897.

12. By a decree of October 5, 1914, the District Court of Arecibo declared Concepción, Evarista, Virginia, Catalina and Juana Rosenda Arvelo y Vega to be the sole and universal intestate heirs of Hilario Arvelo Ríos; Concepción and Evarista to be the sole and universal intestate heirs of Catalina Vega, and Concepción Arvelo to be the sole and universal intestate heir of her sister Evarista.

13. Catalina and Juana Rosenda Arvelo y Vega were minors and Concepción and Virginia Arvelo were of age when the complaint was filed in this action. The children of the second marriage lived with their grandmother, Virginia Arvelo, in the ward of Jayuya, Utuado, and after the death of their father those of the first marriage lived in the ward of Cedro, Utuado, with an aunt.

The statement of the case contains only the evidence adduced at the trial in so far as pertinent to the questions involved in the judgment and the appeal therefrom.

The attorney for the appellants assigns the following grounds of appeal:

1. The District Court of San Juan erred in holding that it was not necessary to make demand for payment upon all of the heirs of Hilario Arvelo.

2. The said court erred in not holding that, inasmuch as the children and heirs of Hilario Arvelo lived in the district where the proceeding was brought, demand for payment should have been made upon them personally or at least an attempt should have been made so to do.

3. The said court erred in not holding that the foreclosure proceeding was null and void for lack of jurisdiction over the persons of the defendants on account of failure to make personal demand upon the debtors.

4. The court erred in holding that the demand made upon Florentina Vega, widow of Arvelo, as custodian of the property, was sufficient to validate the proceeding.

5. The court erred in not holding that the failure to pub-

lish the notices of sale in the *Gazette* for the full legal period invalidated the proceeding.

The first four grounds of appeal may be epitomized into one; namely, that demand for payment was not made upon the succession or successors in interest of debtor Hilario Arvelo in the proceeding brought by the Banco Territorial y Agrícola for the recovery of the mortgage debt due and owing by Hilario Arvelo, deceased, and such demand as made upon the widow is insufficient in law, wherefore the conveyance of the mortgaged property to the Banco Territorial y Agrícola is void, and hence it is liable in damages to the plaintiffs in view of the fact that they are legally incapacitated to bring an action of ejectment against the present possessor of the mortgaged property.

Let us examine this question of law, the main point upon which the appeal turns, in the light of the statutes pertinent thereto, or article 128 of the Mortgage Law and article 171 of the Regulations for its execution.

In prescribing how the demand for payment shall be made in a summary proceeding for the recovery of a debt secured by mortgage, subdivision 2 of article 128 provides as follows:

"Demand for payment shall be made on the debtor if he resides in the place where the estate is located and if his domicile be known; otherwise it shall be sufficient to make demand upon the person who may be in charge of the estate in any legal capacity whatsoever, in order that he may advise the owner of the demand."

After article 170 of the Regulations prescribes that demand for payment shall be made upon the persons who, according to the certificate of the registrar, are in possession of the mortgaged property, whether it be in the hands of the debtor or whether it has been transferred to a third person in whole or in part, article 171 continues as follows:

"When all of the property mortgaged is in the possession of one person only, according to the certificate of the registrar, the demand for payment shall be served on such person at his domicile, if he resides within the municipal district where any of such property

is situated. The same procedure shall be observed with regard to each of the other holders of different properties, if there be several. When any of the persons on whom demand for payment is to be made should not reside in the municipal district where any of the property is situated, the demand shall be made on the person in charge of the estate in any legal capacity whatsoever, in order that he may advise the owner thereof without delay. If the estate should be abandoned and no one in charge thereof, the demand shall be made on the administrative municipal authority of the town, with a similar direction to advise the debtor.

  *     *     *     *     *     *     *

"When the demand for payment is not served at the domicile of the person from whom payment is due, nor on an attorney in fact or lessee having charge of the estate, it shall be published in addition by means of edicts which shall be inserted in the gazette of the corresponding island, and in such case the term of 30 days shall begin to be counted from the date of the publication in said official periodical."

As will be seen, by an express statutory provision demand for payment should have been made upon Hilario Arvelo, who, according to the registry, was the owner of the property mortgaged to the Banco Territorial y Agrícola, if he resided in the ward of Jayuya of the municipality of Utuado, where the mortgaged property was situated, and his domicile was known; but Hilario Arvelo having died before the summary foreclosure proceeding was begun, was it sufficient to make the demand upon the person in charge of the estate in any legal capacity whatsoever? We are of the opinion that it was not.

It is obvious that no demand for payment could be made upon Arvelo because he was dead, but his personality was continued in his heirs, who substituted him in all his transferrable rights, both active and passive, and therefore the demand for payment should have been made upon them, personal demand upon them being excusable only in case they did not reside in the district where the mortgaged property was situated and their domicile was unknown.

The rights to the succession of a person are transmitted

from the moment of his death. Article 657 of the Civil Code of 1899. Succession is granted either by the direction of the man as expressed in a will or, in its absence, by provision of law. Article 658. Heirs succeed the deceased in all his rights and obligations by the mere fact of his death. Article 661. The articles cited are equivalent to sections 665, 666 and 669 of the Revised Civil Code.

Under our laws a succession has no existence as a juridical person. A succession may be made a party plaintiff or defendant, but it must be particularized or individualized by specifying the names of the persons who compose it. It is not a legal entity independent of the heirs, who constitute it and who should appear as plaintiffs or defendants.

In disposing of the case of *Dapena* v. *Estate of Dominicci* on February 14, 1907, (12 P. R. R. 64) this court said that where a complaint is brought against an estate, it should designate the name of each of the heirs or give some reason to justify the omission; and in accord with that doctrine this court, in deciding the case of *Orcasitas* v. *Registrar of Property*, 21 P. R. R. 523, expressed itself as follows:

"We agree with the registrar that if the citing or summoning of the succession was necessary, the composition of such succession should be made to appear, so that the registrar might determine whether there had been proper process."

In this case the Banco Territorial y Agrícola instituted the summary foreclosure proceeding without even alleging the death of Hilario Arvelo or who were his heirs, when it should have given the names of the heirs so that demand for payment could be made upon them personally as the successors in interest of the debtor, if they resided in the district where the mortgaged property was situated and, if not, the demand should have been made upon the person in charge of the property in any legal capacity.

The prayer of the Banco Territorial y Agrícola that demand for payment be made upon the Succession of Hilario

Arvelo resulted in an order of the court before which the proceeding was brought that the demand be made as prayed for and not a demand upon the individuals composing the succession.

It cannot be maintained that in the absence of a demand upon the members of the Succession of Hilario Arvelo the demand made upon his widow was valid in law because she was in charge of the mortgaged property, for such demand would have been legal only if the heirs of the debtor had not resided in the district or municipality where the mortgaged property was situated; and the record shows that the children of Arvelo's first marriage, as well as those of his second marriage, lived in the municipal district of Utuado, where in the ward of Jayuya the property was situated. The widow was not the attorney in fact of the adult children of Arvelo's first marriage, and although she might have been the legal representative of her own minor children, inasmuch as the demand was not made upon her in that capacity, the demand as to the said children could not be valid in law.

"Every person may at different times or at the same time occupy different relations, act in different capacities, and represent separate and perhaps antagonistic interests. It is a rule, both of the civil and of the common law, that a party acting in one right can neither be benefited nor injured by a judgment for or against him when acting in some other right. Hence, if one has an interest in property in his own right, he may still assert it if made a party to an action in a representative capacity, or if interested in a representative capacity may still assert it in such capacity if made a party to an action in his own right." Freeman on Void Judicial Sales, p. 14, par. 3.

Moreover, as the demand for payment was made upon the widow of Arvelo, who was in charge of the property, and not upon the debtor personally, his agent or lessee, the said demand should have been published by means of notices, as prescribed by article 171 of the Regulations for the Execution of the Mortgage Law; and failure to comply with this formality renders the service invalid in law.

The appellants contend that "according to paragraph 2 of article 128 of the Mortgage Law and paragraph 1 of article 170 of its Regulations, demand for payment could be made only upon Hilario Arvelo, who appeared in the registry as the owner, and as he was without domicile by reason of his death, demand for payment could be made only upon the person who was in charge of the property, his widow."

As these same statutes show, the demand upon the person in charge of the property is merely a substituted service, to be resorted to only when demand cannot be made upon the person liable for the debt because his residence is not known, or when it may be dispensed with because the debtor does not reside within the municipal district in which the property is located. In the present case it was neither impossible to make the demand upon the debtor, who upon his death was substituted by his heirs, nor did the heirs reside outside of the municipal district where the mortgaged property was situated.

In authorizing demand for payment upon the person in charge of the property in any legal capacity the statutes cited do not refer to a case in which the debtor had died, but to a case in which the debtor does not reside in the municipal district. Besides, in the event of the death of the debtor the person in charge of the property would be unable to give notice of the demand to the owner, who, by his death, has ceased to be such, the ownership passing to his heirs.

By the death of Hilario Arvelo his heirs became liable for the debt, and no demand for payment was made upon them either personally or through an agent or lessee; hence, as the demand was made upon the person in charge of the property, notice of the same should have been published as we have indicated. But even if such publication had been made, the demand would not have affected the heirs of Arvelo, because the necessary conditions for dispensing with personal service were lacking.

Having considered the first four grounds together, let

us now consider the fifth assignment of error, which is based on the failure to publish the notices in the *Gazette* during the entire time required by law.

The third paragraph of article 128 of the Mortgage Law provides that thirty days after the service of the demand the proper notices shall be published in the *Official Gazette* of the island, containing a statement of the titles of ownership, and the sale shall take place twenty days after the publication thereof; and article 172 of the Regulations prescribes that after the said period shall have expired the court shall order that the mortgaged property be offered at public sale within a period of twenty days, notices thereof being posted in the customary places where the proceeding is being had and where the property is situated, and published in the *Gazette* of the island, setting forth the titles of ownership.

The formalities prescribed for the announcement of the first sale shall be observed also in such subsequent sales as may be ordered.

In the present case the first sale of the mortgaged property was set for April 25, 1898, and notices thereof were published in the *Official Gazette* of the fifth, sixth and seventh of that month; hence the legal period of twenty days intervened between the publication of the notice on April 5 and the holding of the abortive sale.

In computing the twenty days the date of the publication of the first notice is included, for it is not required by the Mortgage Law or by its Regulations that posterior notices shall be published, and the sale must take place twenty days after the publication.

The same may be said regarding the second sale, for this was set for June 20, 1898, and notice was published in the issues of the *Official Gazette* of May 31 and June 1 and 2, the twenty days prescribed by law having intervened between the first publication and the day set for the sale.

The same is not true as to the third sale. This was set for August 4, 1898, and the notice was published on the

seventeenth, nineteenth and twenty-first of the preceding month of July, therefore the time intervening between the first publication and the day set for the sale was only eighteen days, or less than that prescribed by law.

On July 20, 1915, in deciding the case of *Henna et al.* v. *Saurí & Subirá,* 22 P. R. R. 776, we said:

"Failure to publish notices for the entire time required by law does not necessarily annul the sale inasmuch as this requirement may be waived by the debtor; and in order that a junior creditor may obtain a decree of nullity on that ground, we think it is a general principle of law that he must show that he has been gravely injured."

The appellants assert that there is no analogy between that case and this because the position of a junior mortgagee, referred to in the case cited, is different from that of the principal debtor in a foreclosure proceeding, of whom the plaintiffs in the present action are the successors in interest.

We are of the opinion that the appellants are right.

In 17 Cyc, 1245, we read:

"In a majority of jurisdictions the statutes require the notice of sale to be given by publication in newspapers for a designated period, or for a designated number of times, and the general rule is that such statutory provisions must be strictly pursued, and even slight deviations therefrom have been held to invalidate the notice and render the sale at least voidable."

In support of that doctrine the following authorities are cited: 57 Cal. 333; 33 Cal. 45; 33 La. Ann. 271; 9 La. 531; 19 La. 300.

In the case of *Early* v. *Doe,* 57 U. S. 609, 617, the Supreme Court of the United States said that although it is true that there is a difference in the strictness required in a tax sale and that of a sale made under judgment and execution, the same rule applies in both as to the full notice of time which the law requires to be given for the sale; that in an *ex parte* proceeding, under a special authority, great strictness is required, and that an individual cannot be divested of his

property against his consent until every substantial requisite of the law has been complied with.

The proceeding brought by the Banco Territorial y Agrícola de Puerto Rico against the Succession of Hilario Arvelo was a summary, special and *ex parte* proceeding and the provisions of the Mortgage Law and its Regulations should have been strictly observed. Notice of the third sale not having been given by publication for the legal period of twenty days, the conveyance of the property to the bank in payment of the debt was null and void.

The appellee contends that according to article 172 of the Mortgage Law Regulations, as published in Morell's edition of the Mortgage Law and its Regulations authorized by a Royal Order of November 26, 1893, and in the *Official Gazette* of this island on October 28, 1893, the publication of notices in the *Official Gazette* is not necessary, because the said article grants the alternative of posting the notices in the customary public places where the proceeding is brought and where the property is situated *or* of publishing them in the *Official Gazette,* either of these methods of publication being sufficient.

We have before us the official edition of the Mortgage Law for the Colonies bearing the seal of the Spanish Colonial Minister, dated 1893 and authorized by a Royal Order of July 14, 1893, and it does not grant such alternative action, for the paragraph of article 172 of the Regulations to which we have referred does not employ the disjunctive conjunction "or," but the copulative conjunction "and." Paragraph 3 of article 128 of the Mortgage Law provides expressly that thirty days after service of the demand the notices shall be published in the *Gazette* of the island, and although the last paragraph of that article provides that the Regulations for the Execution of the Mortgage Law shall determine the other matters of procedure to be followed in these summary proceedings, it cannot be assumed that the object of the first

paragraph of article 172 of said Regulations was to counteract the general provision of the law by giving the creditor the choice of posting the notices in the public places stated or publishing them in the *Official Gazette* of the island.

It is true, as alleged by the appellee, that the third paragraph of article 128 of the Mortgage Law has reference to the publication of notices of the first sale in the *Gazette,* and that article 172 of the Regulations, in its final paragraph, provides that the second sale shall be carried out in the same manner as the first, without prescribing anything in this regard as to sales subsequent to the second. This omission does not favor the contention that it is not necessary to publish notices of the third sale, for no property can be sold at auction unless notice of the sale is given, and the constant practice of the courts has been that the same legal formalities required for holding the first and second sales must be observed in subsequent ones. This was so understood by the bank itself in the foreclosure proceeding under consideration.

The appellee has insisted before this court that the complaint does not state facts sufficient to constitute a cause of action and that the action is barred by limitation according to articles 1093, 1902 and 1968 of the Spanish Civil Code by the expiration of the period of one year prescribed by subdivision 2 of article 1968 for bringing an action for damages arising from the fault or negligence referred to in article 1902.

The first proposition is untenable because the plaintiffs were not bound first to sue for the annulment of the summary foreclosure proceeding in order to bring the present action for damages; nor were they bound to sue for such annulment in case they could have brought an action in ejectment against the bank to recover the property conveyed in the foreclosure proceeding. *Succession of Suro* v. *Prado,* 21 P. R. R. 227; *Oliver* v. *Oliver,* 23 P. R. R. 168; *Longpré* v. *Díaz,* 59 U. S. (Law Ed.), 1080, 237 U. S. 512.

The complaint alleges facts determining the nullity of the foreclosure proceeding brought by the bank against Hilario Arvelo and the legal incapacity of the plaintiffs to bring any action against the present possessor of the said property, Carlos López de Tord, who purchased the same from the bank in good faith and without knowledge of the said nullity, and these facts are sufficient to constitute a cause for the action brought.

As regards the plea of prescription based on subdivision 2 of article 1968 of the Spanish Civil Code, this should be overruled also for the reasons stated by us in disposing of a similar question in the case of *Carmona et al.* v. *Cuesta,* 20 P. R. R. 215.

The doctrine laid down in that case was followed later in the case of *Carmona et al.* v. *Cuesta,* 23 P. R. R. 636.

The fact that the statement of the case contains only the evidence examined at the trial in regard to the questions involved in the judgment and in the appeal therefrom, without including the evidence which may have been introduced on the question of damages, is no legal ground for sustaining the judgment appealed from in view of the fact that the causes alleged as originating the damages have been shown to exist. *Exchange National Bank* v. *Third National Bank,* 112 U. S. 276; *Texas and Pacific Railway Co.* v. *Cox,* 145 U. S. 593.

It is the province of the lower court to determine the amount of the damages.

The judgment appealed from should be reversed and the case remanded to the district court of its origin for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.