Lafitte et al. vs. Delogny et al.

## No. 7727.

### CHARLES LAFITTE ET AL. VS. WIDOW E. R. DELOGNY ET AL.

The wife may, after the death of the husband, ratify the act by which she had bound herself for his debt, during his lifetime.

The nullity of such an act is only absolute in this sense, that she cannot ratify it as long as she is under the marital influence.

When the wife has ratified such an act after the death of the husband, the ratification is retroactive and renders the act valid from its original date.

Therefore, creditors who only became so subsequently to its date, cannot attack the validity of the ratified act.

APPEAL from the Fourth Judicial District Court, parish of St. James. *Duffel*, J.

*Robt. G. Dugué* for Plaintiffs and Appellants:

The rule that creditors cannot sue to annul contracts made before their debt accrued (C. C. 1993), refers only to contracts which can produce some effect—not to those which can produce none—such as simulated contracts and those which are reprobated by laws of public order. 15 An. 177; 12 An. 173; 1 An. 133.

The prescription of one year against the action of an individual creditor to annul the acts of his debtor, only begins to run from the day he has obtained a judgment against him. C. C. 1994. Until he gets a judgment, he cannot bring the action, unless the defendant in the action to annul be made a party to the suit for liquidating the debt. C. C. 1972, 1975.

An act importing a confession of judgment is not a judgment.

Contracts of a debtor made more than a year before suit is brought to annul them, cannot be avoided, if the only cause of nullity be the preference given to one creditor over another: But, if they contain other causes of nullity, they may be avoided. C. C. 1987.

A married woman cannot bind herself for her husband's debts. C. C. 2398. This is a law of public order; and any attempt to violate it is absolutely null. C. C. 12; Demolombe, vol. 1, p. 15, No. 17; p. 19, No. 20; 9 L. 585; 3 Merlin, Répertoire, *verbo* Dérogation; 1 Toullier, p. 87 *et seq.;* 14 An. 169; 12 R. 82.

Contracts violating that law are considered as made *in fraudem legis*, like other contracts which violate other laws on the same and kindred subjects, and they cannot be ratified. 15 An. 651, 628; 30 An. 291, 1021; 13 An. 12; 29 An. 253; 26 An. 375; 22 An. 462; 9 L. 351; 14 L. 115; 1 An. 304; 12 R. 82.

Creditors of the wife, as well as the wife herself, may attack an invalid mortgage upon her property, and sue to annul a sheriff's sale of her estate made in violation of the rules and forms of law. C. C. 1989, 1990, 1970, 1977: 6 R. 21; 9 L. 542; 6 An. 552; 10 An. 18; 5 R. 288; 30 An. 511.

Lafitte et al. vs. Delogny et al.

The mortgage of a married woman does not bind her, unless it inures to her separate advantage. This advantage is of the essence of the obligation, and must be shown by those who seek to enforce it, in a case where she has not been authorized by the judge. 29 An. 123; 30 An. 1021, 1106.

And in order to bind her, the amount which inured to her benefit must be made certain, and must be shown to have been expended in something which the husband was not bound to furnish her. 9 An. 268; 5 An. 495, 586; 7 N. S. 67; 7 M. 465; 4 R. 510; 1 An. 428; 6 R. 64; 6 An. 57.

When no separation of property is proved, community must be presumed; and all debts contracted during the community, are presumed to be community debts, for which the husband alone is liable. 30 An. 1106; 12 An. 663, 852; 10 An. 30; C. C. 2403; 19 An. 249; 13 An. 546; 6 An. 57; 12 R. 580; 1 An. 428; 5 An. 173, 572; 6 An. 453; 13 An. 593.

The wife is only bound to contribute to the family and household expenses when she has obtained a separation of property—and to bear them alone when nothing remains to the husband, after the judgment of separation has been executed. C. C. 2425.

She ought (but is not bound) to bear a portion of the marriage charges, if all her property be paraphernal and she have reserved to herself the administration of it. C. C. 2389; 10 An. 554; 14 An. 281.

In this case there is no judgment of separation; and it has not been shown that all her property was paraphernal, and that she had reserved to herself the exclusive administration of it.

A notice to pay, a notice of seizure, a notice to appoint appraisers, an inventory of the property seized, etc., are necessary to make a valid sale under executory process. C. P. 735, 745, 654, 671; 6 R. 192; 2 An. 145; 22 An. 22; 1 R. 295; 5 An. 737.

No papers at all were served on Mrs. Delogny, the sheriff's return to the contrary notwithstanding—and the sale is a nullity. (See her sworn testimony, p. 24 of transcript.)

When a writ of seizure and sale prescribes a delay certain for its return into court, it must be returned as in the case of a *fi. fa.* C. P. 745, 642. A sale after the return day is void. 18 An. 657; 22 An. 23; 28 An. 75; 26 An. 735; 2 An. 776.

A sheriff's sale must be made at the seat of justice, unless the debtor requires it to be made on the premises, under pain of nullity. C. P. 664, 665; 17 L. 76; 6 R. 21; 3 An. 147; 2 An. 386.

The agreement between Mrs. Delogny and her son Neuville, to the effect that the exemptions should only apply in case a stranger should purchase the property. considered in this brief at p. 16 *et seq.* Testimony of Mrs. Delogny, pp. 25 and 26 of transcript.

### *J. E. Poché* for Defendants and Appellees.

### *Spencer & White* on the same side:

First—The wife may at any time resume and take the administration of her separate property, and had that administration when the debt to N. R. Delogny was contracted.

Second—When administering, debts contracted by her for the cultivation and improvement of her property are valid. Such was her debt to N. R. Delogny.

Third—When separate in property or separately administering her estate, it is not only her right, but duty to contribute to the family expenses. C. C. 2389, 2395; Toullier, vol. 4, Secs. 553 to 565; Toullier, vol. 3, 2d part, p. 100.

She was separate, and separately administered her estate in this case.

Fourth—To maintain the "revocatory action," the creditor must show first that his debt existed at date of the act complained of; and second, that the act was not only injurious, but fraudulent. C. C. Arts. 1993, 1978.

Plaintiff has proven neither fact.

Fifth—If a debt is a just one it is no fraud to acknowledge it before it is prescribed, or to refuse to oppose its execution. A debtor is not obliged to do wrong to one creditor in order to protect another creditor.

Sixth—If the alleged fraud consists merely in giving preference to one creditor, the action is barred by one year from the date of the act giving the preference. C. C. 1987.

Lafitte et al. vs. Delogny et al.

Plaintiffs' action was brought four years after N. R. Delogny's purchase, and is barred.

Seventh—An act absolutely void and non-existent cannot be ratified. If the law declares that an act done by an incapable can be ratified, that act is not in the proper sense, and, from every standpoint, absolutely void.

Eighth—The law declares that the acts of married women, *ultra vires*, and beyond the limits of their legal capacity, may be ratified. C. C. 1786.

That those contracting with them cannot plead the nullity resulting from her incapacity. C. C. 1791.

Ninth—If an act is, from every point and view null and non-existent, as contrary to public order, any one having the least interest may plead its nullity. C. C. 12.

The fact that the person contracting with the wife cannot plead it, shows that her act is not in all respects null and void.

Tenth—Her act, in such cases, is only conditional. The suspensive condition which affects it is that she shall, or shall not, ratify after her incapacity ceases. If the condition happens—if she ratifies, it is valid from its date. If the condition do not happen, if she does not ratify it, and she or her representatives repudiate it, it is void, *ab initio*. Like all conditional contracts, they are void or valid, *ab initio*, according as the condition happens, or does not happen. The happening or non-happening of the condition retroacts to the day of the contract, and validates or invalidates it accordingly. C. C. 2021, 2042.

Eleventh—It is only in this sense, and to this extent, that the contract can be properly said to be void. It is only when the wife does not ratify it, and it is repudiated by her or her representatives, that the event has happened that nullifies the act retroactively. It is only in this class of cases that our courts have ever declared such acts null and void.

Twelfth—The acts done by married women, *ultra vires*, are only relatively, only conditionally, null. See Marcade, vol. 4, p. 405, on Arts. 1124 and 1125, C. N.; Toullier, vol. 1, pp. 597, 598. See, also, C. C. 2221, which declares that if the wife does not sue to annul such acts within ten years, the action is barred.

Thirteenth—The incapacities of married women may be classified as follows: 1. . Incapacity for want of authorization, Arts. 122, 2397 C. C.; 2. Incapacity growing out of the relation she bears to the husband, C. C. 1790; and 3, incapacity growing out of the subject-matter of the contract, C. C. 1790, 9398.

Fourteenth—Those incapacities are all akin—all of the same nature. They are all born of the same necessity, to wit: That of securing the husband's supremacy on the one part, and of protecting the wife's dependence on the other part. The incapacity in the one case is as much a regulation of public order as in the other. The nullity affecting the wife's sale of her immovables, without authorization, is as radical as that affecting her promise to pay the husband's debt. This is demonstrated by Arts. 2397 and 2398. They are grouped under the same section of the Code treating of the incapacity of the wife; and the language of prohibition is identical in the two articles.

Fifteenth—It is only when viewed from the standpoint of a married woman, who has not ratified, and who, in person, or through her representatives, repudiates the contract, that it can be said, or ever has been said in any adjudicated case, that the contract is null and void. In such a case the condition has happened which defeats, resolves and renders as never having existed, the contract.

Sixteenth—The cases cited by plaintiff are all of the class stated in above, No. 14. They have no application to this case, where the wife, after the death of her husband, has formally ratified the contract, thereby fulfilling the condition wh.ch retroacts and validates the act *ab initio.*

Seventeenth—The note and mortgage are evidence of a single contract. The mortgage act contains full proof of the debt, and of that identical debt, the note is only another and additional evidence. The acknowledgment made in writing on the note, in January, 1872, operated upon the entire contract—just as transfer of the note operates a transfer of the mortgage. The fact that the mortgage is not negotiable, in the sense of the law merchant, so as to defeat equities, is totally irrelevant to this case.

The opinion of the Court was delivered by

TODD, J. The plaintiffs, mortgage creditors of the defendant, Widow E. R. Delogny, seek by this action to annul a sheriff's sale of a plantation, situated in the parish of St. James, made on the 4th of April, 1874. This sale was made in a proceeding to foreclose a special mortgage on the property, executed by Mrs. Delogny on the 29th of November, 1865, in favor of N. R. Delogny, her son, who was the purchaser at said sale, and is also a defendant in the action.

It is charged in the petition that the debt for which the property was sold was not the debt of Mrs. Delogny; that if it ever had any existence at all, it was a debt of her husband, for which she obligated herself in contravention of a prohibitory law; and it was, therefore, an absolute nullity; and further, that it was prescribed before the date of the sale.

It was alleged, also, that the sale was a nullity owing to certain irregularities and illegalities in the proceedings, under which it was made—which irregularities are specifically set forth in the petition.

This action of nullity was coupled with a suit for the debt claimed to be owing the plaintiffs by Mrs. Delogny, and for a recognition of the mortgage securing the same.

The defendant, N. R. Delogny, answered; first, pleading the general issue, and then averring the reality and validity of the mortgage debt under which the property acquired by him at the sheriff's sale was sold, and the legality of that sale, alleging that the consideration of the debt inured to the benefit of Mrs. Delogny, his co-defendant, who, at the time it was contracted, was the owner of the plantation mortgaged, and separated in property from her husband, and finally, he denied the right of the plaintiffs to attack this mortgage or demand the nullity of the same, for the reason that plaintiffs were not the creditors of Mrs. Delogny at the date of the contract, nor till long afterwards.

No answer was filed by Mrs. Delogny. There was judgment by default against her for the debt sued on, with a recognition of the mortgage on certain property not embraced in the act of mortgage to N. R. Delogny, and rejecting the demand for the nullity of the sheriff's sale. From this judgment the plaintiffs appealed.

The mortgage was executed by Mrs. Delogny in favor of N. R. Delogny, on the 29th November, 1865, and the one in favor of the plaintiffs, together with the notes which it was given to secure, on the 29th of December, 1872.

It is plain that, if the mortgage in favor of N. R. Delogny was given to secure a real and valid debt of Mrs. Delogny, and it was a subsisting debt at the time of the sale in question, it could not be attacked by the plaintiffs, who became her creditors long after its execution. This, we

understand, is conceded. The plaintiffs, however, deny that it was given to secure a legal or valid debt of Mrs. Delogny. On the contrary, they aver that the alleged debt and mortgage never had any existence, that they were absolute nullities, because given for the debt of the husband of Mrs. Delogny, then living, in contravention of the express provision of the Code, declaring that a wife cannot bind herself for the debt of the husband. They further charge that this debt, if it ever existed, was extinguished by prescription before the sale was made under it.

It is shown that the plantation mortgaged was the separate prop-erty of Mrs. Delogny, and had been long prior to the date of the mortgage in favor of her son. Much testimony was taken to show that Mrs. Delogny had the separate administration of her property, and that the debt in question inured to the separate benefit of her property under her exclusive administration, and that, therefore, the debt was her debt not the husband's, for the payment of which she legally bound herself in the act of mortgage.

The view we take of this case, after a thorough investigation of the issues presented in the pleadings and the law bearing on the same, renders it unnecessary that we should decide this question of law and fact, in regard to and bearing upon the original liability of Mrs. Delogny for this debt. We are strongly inclined to believe, from the evidence, that the debt, or a large portion of it, was contracted for the benefit of Mrs. Delogny's separate property, and administered by her, and, therefore, a valid and subsisting debt against her; but, as stated, the decision on this point is not necessary to the conclusion to which we have arrived.

As shown above, the act of mortgage in favor of N. R. Delogny was passed in November, 1865. The husband of Mrs. Delogny died in 1866 On the 6th of January, 1872, Mrs. Delogny formally and in writing acknowledged the debt, and promised to pay it, thus fully ratifying the contract, and interrupting prescription upon it. In December, 1872, she executed the mortgage and notes in favor of the plaintiffs.

The mortgaged property was sold in April, 1874, under executory process taken out on the mortgage in favor of N. R. Delogny, and by her silent acquiescence in the proceedings and sale, she again ratified the contract in which they were based.

Admitting that the debt originally was the debt of her husband, which she thus ratified and promised to pay and permitted the sale of her property to pay, did such ratification create any legal obligation on her part, and make the debt a valid debt against her from the time it was contracted? In other words, was the mortgage given by her for the debt of her husband, conceding it to be such, a nullity so absolute and radical as could not be ratified by her, after the death of the husband and after she was thus freed from marital power and influence?

The question of the nullity of contracts has been a subject of profound inquiry to civilians, in the discussion of which they have displayed a great deal of legal acumen and ingenuity—sometimes presenting distinctions respecting the different classes of alleged nullities so refined and attenuated as to be almost beyond the power of the human mind to grasp them. Out of these discussions we can, however, deduce certain general rules or principles bearing on the subject, which, from frequent recognition and adjudication, may now be regarded as almost elementary.

While we find that the best known and most marked division of nullities is that of absolute and relative nullities, yet the former have been subdivided into two kinds or classes.

For instance, if the cause of nullity in a contract rests on motives primarily or exclusively of public policy or social order, or has its origin in the respect due to good morals, it is a nullity so absolute and radical that the law always and continually resists it and makes and declares it as non-existent and not susceptible of ratification. Among contracts thus tainted are cited contracts by the father or husband to surrender the paternal or marital power, contracts to pay money for the commission of a crime, a partition of a succession before it is open, and such like contracts.

This principle is thus enunciated by Dunod, a writer of acknowledged distinction:

"La prohibition est censée faite par rapport à l'intérêt public lorsque son premier et principal objet est le bien de la société, la conservation des choses et droits qui appartiennent au public, et qu'elle statue sur ce qui concerne les bonnes mœurs, ou ce qui est hors du commerce, par le droit naturel, des gens ou civil.

" Telles sont les dispositions des lois au sujet des actes qui emportent quelque délit ou quelque turpitude, ou contiennent l'aliénation de ce dont le commerce est interdit, pour une cause publique et perpétuelle comme les choses sacrées et le domaine.

"La nullité qui résulte de la prohibition en ce cas est absolue, parceque la loi résiste continuellement et par elle même à l'acte qu'elle défend; elle le réduit à un pur fait, qui ne peut être ni confirmé ni autorisé, et qui ne produit aucun droit, aucune action ni exception. Cette nullité peut être objectée, non-seulement par la partie publique, mais encore par toutes sortes de personnes."

Dunod, Traité des Prescriptions, 1er part, chap. 8, p. 47.

Another class of nullities which do not fall strictly under the principles above referred to are, nevertheless, in a certain sense, absolute. It is that class of nullities which, while they to some extent affect public

order and the general interest of society, are nevertheless established primarily in the interests of individuals.

As the same author expresses it:

" Quoique la fin de la loi soit toujours l'intérêt du public et de la société, la vue de cet intérêt est souvent éloignée, et la loi considère en premier lieu, dans sa prohibition et dans les nullités qu'elle prononce, l'intérêt des particuliers." *Primario spectat utilitatem privatam et secondario publicam.*

Toullier, speaking of this class of nullities, uses this language:

" Des nullités prononcées principalement, *primario,* pour intérêt des particuliers    *    *    *    sont néanmoins absolues dans ce sens qu'elles anéantissent essentiellement et radicalement l'acte et le font regarder comme non fait et non avenu.

" Ainsi, s'il est vrai que toutes les nullités qui ont l'intérêt public pour cause première sont absolues, il n'est pas vrai de dire que toutes les absolues ont pour cause l'intérêt public."

Toullier, vol. 4, 553 *et seq.*

This division of absolute nullities into two kinds, based on the reasons mentioned by the authors cited, has been expressly sanctioned by the decisions of this Court.

Vaughan vs. Christine, 3 An. 328.

Chesneau's Heirs vs. Sadler, 10 M. 226.

Hassel's Heirs vs. Lefebre, 6 L. 601.

Toullier cites among this kind of nullities the alienation of dotal property and the sale of an immovable of a minor by his tutor; and in regard to the latter, he says: this sale of a minor's property is null, absolutely null, yet the minor may ratify it, and then adds:

" En un mot, nous ne connaissons point de nullité fondée sur l'intérêt privé qui ne puisse être réparée par la ratification expresse ou tacite."

And this language of Toullier, and the doctrine which it sanctions, have been approved by this Court.   3 An. 328.

The nullity charged, respecting the act of mortgage executed by Mrs. Delogny in favor of her son in this case, may be classed among the nullities that results from the incapacity of the wife, growing out of the relation she bears to her husband.   C. C. 1790.

To judge of the character of the nullity, we must consider the reasons for its enactment.

It is evident that when the law declares that the wife cannot bind herself for her husband, or become security for his debts, this was to protect her against acts resulting from her dependence on her husband. The law grants to the married woman the ownership of all property

which she may bring into the marriage, or which may fall to her by in-
heritance or otherwise, after marriage, with the further right to the
separate administration of such property. All these and similar rights
granted by law to married women would be insecure, and amount to
little or nothing, if the wife were permitted to bind herself for her hus-
band's debts, and hence, the necessity of the safeguard and protection
afforded her and her property against the marital power of the husband,
in the wise provision which declares that she cannot thus obligate her-
self for the debts of her husband. If, in violation of this legal provision,
she does so contract, the contract is a nullity, and, in a certain sense, an
absolute nullity. During the continuance of marital authority, it has no
existence, and she cannot ratify it. And even when the marital authority
ceases by the death of the husband or otherwise, it is still non-existent,
and she and her heirs after her can invoke the nullity of her act. And
such contract can never spring into life or obtain vitality unless the
wife, emancipated from marital authority and restored to her full and
complete capacity to contract, chooses, in the exercise of her freedom, to
ratify it, and by such ratification endow with being a contract, which,
up to that time, had remained dormant, or had never existed. *Ratione
cessante, cessat ipsa lex.*

Such a contract may be assimilated to other contracts which the
wife is forbidden to enter into without the consent of her husband.
Thus article 2397 Civil Code declares that the wife, whether separated
in property by contract or judgment, or not separated, *cannot*, except
by and with the authorization of her husband, and in default of the
husband, with that of the judge, alienate her immovables of whatever
nature they may be. And another article (124) forbids her to mortgage
or acquire without such authorization. These provisions of law may be
presumed to have been enacted in a certain sense from motives of pub-
lic policy and the general interests of society, for the proper and salu-
tary maintenance of marital authority, as the other, first quoted, was
designed for the protection of the wife against the undue exercise of
such authority. They seem to stand on the same footing; and it is
worthy of note that article 2397, forbidding the wife to sell her immov-
ables, and article 2398 containing the prohibition against her binding
herself for the husband's debts, constitute of themselves one section,
and that section is entitled, "Of the wife's incapacity to alienate her
immovables or to bind herself for her husband." Such arrangement
and grouping of the articles, with the common title given them, afford
a fair inference that the nullities established by the said articles are of
the same character. Now, it will hardly be questioned that a married
woman who sells her immovable without the authority of her husband,
can ratify such sale after the dissolution of the marriage; yet, the same

terms of prohibition are used in the one article as in the other, and motives of public order or social interests evidently underlie both.

Nor is the Code silent in regard to the power of the wife to ratify contracts which the law forbid her making during marriage, after such disability shall have ceased. Article 1786 C. C. declares:

" The unauthorized contracts made by married women, like the acts of minors, may be made valid after the marriage is dissolved, either by express or implied ratification."

And in this power of ratification thus conferred we see no distinction made in the contracts that may be ratified and no limitation of the power to ratify, to any particular class of contracts.

One test of the absolute nullities of contracts, that is of nullities of so absolute a character that they can never be ratified, is that such contracts confer no rights on any party thereto, and no right or claim can grow out of them; that the nullity can be invoked, not only by the parties, but by any one having the least interest in doing so. If the prohibited contracts of a married woman were of this class, she could in no case claim any right under them, but they would be void as to her as well as to the party with whom she contracted. Yet, the law has expressly provided "that persons who have treated with a married woman cannot plead the nullity of the agreement, if it is sought to be enforced by the party when the disability shall cease.

The case of Gasquet vs. Dimetry, 9 An. 585, strongly relied on by the plaintiffs' counsel in support of his position on this question, nor in fact any of the numerous authorities cited by him, are in opposition to the views we have expressed. The case referred to and the others mentioned were cases where the wife never ratified the contract, and where she or her representatives had invoked its nullity. We have stated expressly that, where there is such want of ratification, or where its nullity is invoked, the contract can never be said to have existed at all; but is void *ab initio*.

The contract between Mrs. Delogny and N. R. Delogny, being one that was susceptible of being ratified by her, granting that it was in the beginning invalid, and being thus ratified, such ratification was retroactive, and gave it a legal effect from the day it was entered into by the parties. *Omnis ratihabitio retro trahitur et mandato æquiparatur.*

The plaintiffs, not being creditors of Mrs. Delogny at that time, and the obligations sued on having been contracted subsequent to the ratification of the contract complained of, they have no legal right to attack it.

The only remaining question to be noticed, is in relation to the alleged nullity of the sheriff's sale on account of the illegalities charged in the petition.

We have examined carefully the proceedings under which the sale was made, and the sheriff's deed to the property. The deed details with remarkable particularity the observance of *all* the formalities prescribed by law as essential to the validity of a sheriff's sale. The recitals in the deed, taken in connection with the judgment and writ under which the sale was made, make *prima facie* evidence of the validity of the proceedings and of the proper observance of the formalities embraced in such recitals, and are conclusive of the regularity of such proceedings and validity of the sale, unless successfully contradicted by opposing evidence. Giving the fullest effect to the testimony introduced to rebut these presumptions, it does not create a probability that any of the required formalities were omitted. It is not necessary that we should refer specially to this testimony or describe wherein and how it was insufficient to support the charges of irregularity directed against the sale; it is enough to state our conclusions in this regard.

Nor do we perceive that the failure of N. R. Delogny to sell or have sold all the property mortgaged to him, affects or in any manner impairs the validity of the sale. Such exemption certainly gave plaintiffs, subsequent mortgagees, no cause for complaint.

The judgment of the lower court is affirmed with costs.

Rehearing refused.

Mr. Justice POCHÉ recuses himself, having been of counsel.