LAND, J.
This is a petitory action instituted by petitioner and her husband, appearing herein individually and as head and master of the community, against Alice White Lewis, the surviving widow of Jerry Lewis, and defendant company, as parties in possession, to be decreed the owner of an undivided one-half interest in certain lands situated in the parish of Claiborne, and for judgment against defendants in solido for the value of one-half of the oil taken from said lands.
Plaintiffs applied in their petition for a writ of judicial sequestration, but by subsequent agreement signed by counsel on both sides, it was consented that the defendant *387 company, as the lessee of Alice White, should continue to receive the output from all wells on the land in controversy and should dispose of the same as it might think best, and should hold the proceeds of one-half of all the oil until the final determination of this suit, and should pay such proceeds to whomsoever might be finally adjudged the owner of the same.
On January 1, 1896, the New England Mortgage Security Company of the State of Connecticut conveyed to Alice White, for the consideration of $425 cash, the S. V% of the S. W. Vi and the N. W. Vi of the S. W. Vi of section 25, township'21, range 8, containing 120 acres, located in the parish of Claiborne, state of Louisiana. This deed was filed for record March 15, 1908. x
Petitioners’ vendors are the heirs of Jerry Lewis, and the issue of his first marriage with Mary Nuckles about the year 1866. On April 6, 1904, Jerry Lewis contracted a second marriage with Alice White, but there was no issue of this last marriage. It therefore appears that at the date of the marriage of Jerry Lewis to Alice White, this property was her separate, paraphernal estate, having been previously. acquired by her in the year 1896.
We find in the record two powers of attorney. One is of date March 11, 1908, signed by “Alice (her X mark) Lewis,” “Attest Frank White,” and filed for record March 14, 1908. This power of attorney evidences no authorization by Jerry Lewis to his wife to execute the same. The other power of attorney is of date January 11, 1910, and is Signed by “Alice X White,” and “F. A. White.” It is attested by Wm. Hardy and Frank White, and is also signed by “Jerry X Lewis” to authorize his wife to execute the same. Each of these mandates is otherwise identical in terms:
“I hereby authorize my son, Frank White, to sell and convey to Dr. J. W. Featherstone my ■140 acres of land which is now mortgaged to Mr. J. C. Bridgeman, said land to be sold for one hundred dollars cash. I hereby ratify all that he may do in the premises.”
On March 12, 1908, and under the power of attorney of date March 11, 1908, a deed was executed by Frank White as agent of Alice Lewis, and - by himself acting individually, conveying to Dr. J. W. Featherstone the .S. Vz of the S. W.y, and the N. W. Vi of the S. W. Vi of section 25, township 21 N., range 8 W., and the S. E. Vi of the N. E. Vi of section 35, township 21 N., range 8 W., containing 160 acres more or less, with all and singular the improvements thereon. The consideration of this sale stated in the deed was the sum of $230 cash.
On January 13, 1910, Dr. J. W.' Feather-stone reconveyed ‘to “Alice Lewis, wife of Jerry Lewis, hereto authorized and assisted by her said husband who signs to authorize her herein,” the following described property, to wit:
“The Sy2 of SW% and NW% of SW% of section twenty-five (25) in township twenty-one (21) north of range 8 west, being the same property acquired by this vendor from this vendee heretofore and containing 120 acres more or less, with all and singular improvements thereon.” (Italics ours.)
The consideration stated in this transfer was $187.70 cash.
On the same date of the execution of this deed, to wit, on January 13, 1910, Alice Lewis, duly authorized by her husband, Jerry Lewis, executed a mortgage on said 120 acres of land in favor of Dr. J. W. Featherstone! to secure the payment to him, or to any futur^ holder, of a certain promissory note for the sum of $204.50, executed by Frank White and due December 1, 1910.
On February 20, 1918, Alice Lewis, “widow of Jerry Lewis, deceased,” as recited in the mineral agreement between herself and the Texas Company, leased to said company the S. % of S. W. Vi and the N. W. % of the S. W. Vi of section 25, township 21 N., range 8 *389 west, containing 120 acres, for the purpose of prospecting for oil, gas, and sulphur. The consideration of this lease was the sum of $120 cash.
On December 31, 1920, the heirs of Jerry Lewis, who died on or about January 10, 1916, entered into a contract with the law firm of Stubbs, Theus, Grisham & Thompson, composed of F. P. Stubbs, J. C. Theus, O. Grisham, and M. C. Thompson, by the terms of which said heirs employed said law firm to recover a one-half undivided interest in and to the S. Y2 of the S. W. % and the N. W. Y± of the S. W. Yi of section 25, township 21 N., range 8, and also in and to all of the oil or the proceeds thereof that has been taken from the above-described land. Paragraph 2 of this agreement recites that—
“The fee for such service has been and is hereby fixed at seven-eighths of whatever is recovered by parties of the second part for the parties of the first part, whether it be land or oil taken from the land, the proceeds of such oil, or any other kind of property.”
Paragraph 1 of said agreement declares that the heirs of Jerry Lewis have sold, transferred, and delivered unto the members of said law firm “a soven-sixteenth undivided interest in and to” the property described in said paragraph. In paragraph 4 of said agreement the parties of the second part, or either of them, are appointed as the true and lawful agents and attorneys of the parties of the first part, and given full and complete power “to sell or lease for them at such prices and on such terms as they or either of them may fix or determine, in part or all of the property covered by this contract, when the same shall have been recovered by parties of the second part for the parties of the first part, as fully and completely as though acting for themselves.”
On February 10, 1921, the heirs of Jerry Lewis expressly accepted his succession pure.ly and simply in a petition filed in the Third judicial district court, and prayed that they be sent into possession of the property composing his succession, which .they alleged to consist in part of the decedent’s undivided one-half interest in and to the N. W. % of the, S. W. 14 and S. Yt of S. W. % of .section 25, township 21, range 8 west, averring that said, property belonged to the community existing between him and Alice White, his second wife, whom he married on or about April 6, 1904.
On February 12, 1921, a judgment wás signed recognizing said heirs as the only children and sole heirs of Jerry Lewis, deceased, and sending them into the possession of the said property.
On February 12, 1921, the heirs of Jerry Lewis, duly recognized as such and sent into the possession of his estate, conveyed to Mrs. Rowena O. Otis, wife of William -A. Otis, residents Of the city of Colorado Springs, state of Colorado, an undivided one-half interest in and to the N. W. % of the S. W. % and S. % of ,S. W. % of section 25, township 21 N., range 8 W., with all buildings and improvements thereon, for a consideration recited in the deed to be the sum of $3,000 cash.
The petitioners allege that the community existing between Jerry Lewis, the father of their vendors, and his second wife, Alice Lewis, acquired the lands in dispute in this case by purchase from Dr. J. W. Feather-stone on January 13, 1910, as shown by deed of said date passed before E. H. Fortson, deputy clerk and notary public, and duly recorded in the conveyance records of the parish of Claiborne.
The bone of contention in this case between plaintiffs, on the one hand, and Alice Lewis and defendant company, her lessee, on • the other hand, is whether this property belonged to the community of acquets and gains existing between Alice White and Jerry Lewis, or whether said property constituted her separate and paraphernal estate. In order to determine this question justly and intel *391 ligently, we have at great pains set forth the various deeds, agreements, and proceedings relating to the status and title of the land in controversy in this case.
The record before us shows clearly that Dr. J. W. Eeatherstone purchased this property from Alice White March 12, 1908, under the unauthorized power of attorney of date March 11,1908. We find a copy of this power of attorney on page 76 of the transcript, with the following notation in brackets immediately beneath it:
“[Then follows the deed which will appear on page 81, under mark of defendant ‘D’ and plaintiff ‘Z.’]”
Referring to page 81 of the Transcript, we find this power of attorney forming the preamble, as it were, of the act of transfer from Alice Lewis to Dr. Eeatherstone. This power of attorney and this act of sale form one continuous instrument, and, in addition to this, this power of attorney is identified with the act by the following recital in the deed:
“This day personally came and ‘appeared Alice Lewis, by Frank White, as per power atty. attached, and Prank White for himself,” etc. (Italics ours.)
Alice White was not authorized by her husband, Jerry Lewis, to execute this mandate, as shown upon its face; nor did Jerry Lewis, the husband of Alice White, join her in the deed for the purpose of authorizing her to alienate her separate property. This power of attorney and deed were filed for record as one instrument March 14, 1908, as shown upon the face of the copies in the Transcript, pp. 76 and 81.
The sale by Alice White of her paraphernal property to Dr. Featherstone on March 12, 1908, without the authorization of her husband, was illegal, it is true, but it was a relative nullity which could be barred by the prescription of five years under article 3542 of the Civil Code, providing that actions for the nullity or rescission of contracts, testaments, or other acts are prescribed by five years. This prescription runs from the date of the dissolution of the marriage, and is specially pleaded by plaintiffs in this case. Brownson v. Weeks, 47 La. Ann. 1042, 17 South. 489 ; Vaughan v. Christine, 3,La. Ann. 328 ; Lafitte v. Delogny, 33 La. Ann. 659 ; Munholland v. Fakes, 111 La. 931, 35 South 983 ; Doucet v. Fenelon, 120 La. 18, 44 South. 908 ; Hamilton v. Hamilton, 130 La. 302, 57 South. 935 ; Jackson v. Currie, 144 La. 89, 80 South. 210.
Jerry Lewis died on the 20th day of January, 1916. The petition in this suit was filed February 24, 1921, the answers on April 14, 1921, and the amended answer pleading the want of authorization was filed May 9, 1921; all of the proceedings being after the lapse of five years from the date of the death of the husband. It follows, therefore, that the plea of prescription is well founded and must be sustained. The want of authorization by her husband to execute the act of sale to Dr. Featherstone therefore is not available as a defense by defendants.
All property purchased during the existence of the dommunity in the name of the wife is presumed to belong to the community, and, in order to rebut this presumption, the wife must show with legal certainty: First, 'that the price was her paraphernal funds; second, that it was administered by her; third, that it was invested by her. Civil Code, 2402; Stauffer v. Morgan, 39 La. Ann. 632, 2 South. 98 ; Bachino v. Coste, 35 La. Ann. 570 ; Pearson v. Rieker, 15 La. Ann. 119 ; Knoblock v. Posey, 126 La. 610, 52 South. 847 ; Fisher v. Gordy, 2 La. Ann. 762 ; Shaw v. Hill, 20 La. Ann. 531, 96 Am. Dec. 420 ; Davidson v. Stuart, 10 La. 148 ; Dominguez v. Lee, 17 La. 296 ; Block v. Melville, 10 La. Ann. 784.
The record is barren of any evidence in this case to rebut the presumption that the property conveyed by Dr. Featherstone' to Alice White on January 15, 1910, and purr- *393 chased by her with the consent of her husband, by authentic act, did not belong to the community of acquets and gains existing between Jerry Lewis and Alice White at the time of his death.
' Defendants in their answer attack the act of sale to plaintiffs from the heirs of Jerry Lewis as a simulation. They aver that plaintiffs are without any actual interest or right to prosecute this suit, and are merely parties interposed. The testimony in the case, in our opinion, rebuts these contentions.
Defendants also charge that the power of attorney of date March 11,1908, under which the property in dispute in this case was conveyed to Dr. Featherstone by Alice White, is a forgery; and, if not a forgery, they allege, in the alternative, that said conveyance ■was intended as a mere pignorative agreement to secure a debt due by Frank White to Dr. Featherstone, and that when Dr. Feather-stone ascertained that said power of attor-’ ney had been executed without the knowledge or consent of Alice White, he voluntarily retroceded to her the property, and accepted a mortgage on same as security for a note due by Frank White to him.
The testimony fails' to show that said power of attorney was forged. The- parol testimony offered to prove that said act of transfer, authentic in form, and evidencing upon its face an unconditional sale for valuable consideration, was intended as a mere mortgage -or security for debt, was timely objected to, and was clearly inadmissible for such purpose, especially against plaintiffs, who are third persons purchasing upon the face añ'd faith of the public records. The defendants allege neither fraud nor error as a basis for the contradiction of the recitals of said act of sale. They merely charge that the power of attorney was forged, 'and failed to sustain this allegation by sufficient proof. The rule is unbending that in order to contradict the recitals of a written deed by parol evidence, error or fraud must be alleged and proved:, Salmen Brick Co. v. Peterson, 121 La. 528, 46 South. 616 ; Jackson Brewing Co. v. Wagner, 117 La. 878, 42 South. 356.
Nor is parol evidence admissible to show that a sale was intended as a mortgage, even when the vendor remains in possession. Franklin v. Sewall, 110 La. 292, 34 South. 448 ; Cary v. Richardson, 35 La. Ann. 505 ; Mulhaupt v. Youree, 35 La. Ann. 1052 ; Tutorship of Hacket, 4 Rob. 291.
It is the settled jurisprudence of this state that where the owner of land, uninfluenced by fraud or error, vests the title thereto in another, such title can be divested only upon the production of a counter letter, or upon the basis of answers to interrogatories propounded to the apparent owner. Maskrey v. Johnson, 122 La. 701, 48 South. 266 ; Breaux v. Royer, 129 La. 894, 57 South. 164, 38 L. R. A. (N. S.) 982 ; Pfeiffer v. Nienaber, 143 La. 601, 78 South. 977.
A plea of estoppel is also set up in the answers of defendants. It is based upon the ground that plaintiffs and the heirs of Jerry Lewis are barred from claiming the property in this case, because plaintiffs and their vendors knew that the said property did not belong to the community existing between Alice White and Jerry Lewis, as the public records showed in the partition of the estate of Jerry Lewis between his heirs and Alice White, his surviving widow, that only 55 acres of land in a different section was included as the property belonging to his succession; and because Alice White has remained as owner in the actual possession of the property in dispute since the death of her husband, without the heirs of Jerry Lewis disturbing her in such possession by any adverse claim of ownership. The fact that the record may show that the property claimed in thi¿3 suit was not partitioned as belonging to the succession of Jerry Lewis is not a record fact indicating that his heirs had no title *395 to the property in controversy, as the fact that they had such interest clearly appears upon the face of the recorded deed from Dr. Peatherstone to Alice White, who was duly authorized to purchase said property by her husband, and said deed contains no recital to show that the property was acquired by her as her separate estate.
In the case of Gonsoulin et al. v. Sparrow, 150 La. 108, 90 South, p. 528, we said :
“That innocent third parties who deal on the faith of the public records are protected thereby is a question no longer open to discussion, as it is the settled jurisprudence of this state.”
, Mr. Justice Provosty, concurring in that decision, said:
“By the decision in McDuffie v. Walker, 125 La. 152, 51 South. 100, this court settled the at one time vexed question as to whether a third person can acquire a good title from the owner of record even though knowing this owner not to be the true owner. That view has since been repeatedly reaffirmed.”
Good faith is presumed, and we find nothing in the record to impugn the good faith . of the plaintiffs. They are therefore entitled to recover on the strength of their' title.
, It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the petitioner Mrs. Rowena O. Otis- and the petitioner William A. Otis, her husband, and the community existing between them as husband and wife, be and are hereby decreed to be the true and lawful owners of an undivided one-half interest in and to the following described property, to wit: Northwest quarter of southwest quarter (N. W. % of S. W. %) and south half of southwest quarter '(S. Vs of S. W. %) of section twenty-five (25), township twenty-one (21) north, range eight (8) west, situated in the parish of Claiborne, state of Louisiana, together with an undivided one-half interest in and to all oil heretofore taken from said property by the defendants Alice White and the Texas Company. The right of petitioners and of the community existing between them as husband and wife to recover against defendants Alice White and the Texas Company in solido one-half of the value of all oil heretofore taken by said defendants from said property is hereby expressly reserved and recognized. The appellees to pay the costs of this appeal.
O’NIELL, J., dissents.
ST. PAUL, J., concurs in the decree.