211 So.2d 354 (1968)
CATTLE FARMS, INC., et al.
v.
James S. ABERCROMBIE et al.
No. 2697.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1968.
Rehearing Denied July 1, 1968.
*356 Taylor Caffery, Louis C. Guidry, Andrew S. Zengel, Arthur C. Reuter, New Orleans, for plaintiffs-appellants.
Phelps, Dunbar, Marks, Claverie & Sims, J. Barnwell Phelps, Hermann J. Schulze, Henican, James & Cleveland, C. Ellis Henican, Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Peter A. Feringa, Jr., Harold R. Ainsworth, Doyle, Smith & Doyle, Donald W. Doyle, Blake G. Arata, New Orleans, for defendants-appellees.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
SAMUEL, Judge.
Plaintiffs filed suit to quiet title to property they allegedly own, seeking cancellation of various inscriptions from the conveyance records of Plaquemines Parish which were registered at the instance of defendants. Plaintiffs complain the inscriptions cast clouds on the title to their property, which they describe as follows:
All of Section 30 East of Tiger Pass, all of Section 31 East of Tiger Pass, all of Section 32, all in Township 21 South, Range 31 East in Plaquemines Parish Louisiana.
In the alternative, plaintiffs allege that neither they nor defendants are in actual possession of the property and they pray the Court declare their title superior to that of the defendants. As a second alternative, plaintiffs pray for a declaratory judgment decreeing their ownership of the property.
Defendants answered asserting ownership of the land. They aver plaintiffs' ancestor in title sold the land in 1929 and defendants thereafter acquired title through mesne conveyances. Defendants seek a declaration of their ownership either by judgment rendered as one in a petitory action or by a declaratory judgment. In addition, they pray that the instruments under which plaintiffs claim title be ordered cancelled from the conveyance records of Plaquemines Parish.
The trial court treated the matter as a petitory action and rendered judgment decreeing defendants owners of the disputed tract. Plaintiffs have appealed. Defendants have neither appealed nor answered the appeal taken by plaintiffs.
Among plaintiffs' numerous complaints of error is the classification of this litigation as a petitory action. We defer a discussion of the procedural aspect to the end of the opinion.
As to the substantive issues, lands in the three sections of T 21 S, R 31 E, to which plaintiffs claim title, constitute a portion of the property acquired by defendants under the following description:
"All of the lands situated in the Parish of Plaquemines in the Southeastern Land District of the State of Louisiana, West of the Mississippi River, included within the limits of Township Twenty-One (21) South, Range Thirty-one (31) East. * * *
"And particularly including * * * lands lying below the Jump in T 21 S, R 31 E. * * *"
Although the township is subdivided into sections, defendants' titles contain no precise boundary descriptions. They simply describe land in the township located below the Jump. The Jump is a point on the west bank of the Mississippi River where the River junctures with Grand Pass. According to the evidence in the record, the west bank of the levee crevassed in 1836 at *357 the point that has since been commonly known as the Jump. Sections 30, 31 and 32 of T 21 S, R 31 E are due south of the Jump area and down river from this point. The maps introduced as exhibits indicate there are at least eleven other sections of this township lying, either in whole or in part, down river from the Jump. The upper part of this township is north of the Jump.
Both plaintiffs and defendants claim Rectangle Ranche Company as an ancestor in title. The present plaintiffs state they acquired their interest from Rectangle in 1949 when, as stockholders, they received title to this property when the corporation's assets were liquidated. Defendants conversely urge that Rectangle divested itself of title to the property in 1929 in a quitclaim deed to Emile Rose and thereafter they acquired title through mesne conveyances.
Plaintiffs claim the 1929 quitclaim deed did not convey title to Sections 30, 31 and 32 of T 21 S, R 31 E. At the time of this quitclaim, there were three different land claims pertaining to property in this township, namely, the Packard Claim, the Lacey Claim and the Leovy Patents. Plaintiffs point out that if title is run from each of these original grants to 1929, it may be noted that certain verbage is used in one chain of title and the phraseology of the description indicates to an abstractor which claim in the township is being conveyed. Plaintiffs contend these descriptions have been historically used in describing these claims:

Packard Claim "A certain tract of land situated on the right bank
 of the Mississippi River * * * and lands lying
 below the Jump in T 21 S, R 31 E; * * *"
Lacey Claim "A certain tract of land situated on the right bank
 of the Mississippi River designated as * * * T
 21 S, R 31 E, situated in the Parish of Plaquemines,
 State of Louisiana."
Leovy Patents "A certain tract of land situated on the right bank
 of the Mississippi River and designated as all of
 Section 30 E of Tiger Pass, all of Section 31 E of
 Tiger Pass, Section 32, T 21 S, R 31 E; * * *"

The Packard Claim originated by a grant from the State to C. C. Packard of all the unsurveyed sea marshes in T 21 S, R 31 E containing 1320 acres. The extent of the land conveyed was determined by the Supreme Court in State v. Buck, 46 La.Ann. 656, 15 So. 531 (1894) to be sea marshes along the west bank of the Mississippi River in this township. Part of this claim is above the Jump, and part below the Jump. When the case was decided, R. White owned the claim. Years later he lost the Packard grant to one Wilbur Kranebell through a marshal's seizure and sale, and part of the property sold was described as "* * * land lying below the Jump in Township 21 South, Range 31 East * * *." This same verbage was part of the description under which Rectangle acquired from Kranebell. Lands included in the Packard Claim lying below the Jump in T 21 S, R 31 E are far to the east of Sections 30, 31 and 32.
The Lacey Claim originated in 1896 when the Buras Levee District conveyed to James Lacey:
"All the land now belonging to or which may hereinafter inure to the Board of Commissioners for the Buras Levee District under Act No. 18 of the General Assembly of the State of Louisana * * * *358 of * * * 1894 * * * situated in the Parish of Plaquemines * * * West of the Mississippi River * * * included within the limits of * * * Township Twenty-one (21) South, Range Thirty-one (31) East * * *"
Lacey sold to C. C. Buck, who in turn transferred this claim to Louisiana Agricultural Corporation. Louisiana Agricultural Corporation, along with C. C. Buck individually and Rectangle, were co-vendors in the 1929 quitclaim deed from Rectangle to Rose. The original sale to Lacey conveyed interests in other townships in addition to T 21 S, R 31 E. The Lacey Claim, insofar as it concerns title to property in another township, was discussed by the Supreme Court in Waterman v. Tidewater Associated Oil Company, 213 La. 588, 35 So.2d 225. The court held the transfer to Lacey covered only lands acquired by the United States under the Swamp Land Grants Act and did not include sovereignty lands. Under the Waterman holding, Sections 30, 31 and 32 of T 21 S, R 31 E would also not be included in the Lacey claim as they are sovereignty lands.
The Leovy Patents originated in 1893 and 1894 through six patents under which the State deeded to Henry Leovy lands in Sections 30, 31 and 32 of T 21 S, R 31 E, and designated the land conveyed by specific sections or parts of sections in T 21 S, R 31 E. This description was included in all mesne conveyances from Leovy through the Rectantle acquisition from Kranebell in 1927 as follows:
"All of Sections 30 and 31 East of Tiger Pass, all of Section 32, Township 21 South, Range 31 East."
Plaintiffs contend that Rectangle's acquisition from Kranebell indicates he purchased the Leovy Patents because the Leovy description is contained in the act; however, plaintiffs assert that the Rectangle-Rose quitclaim did not transfer the Leovy patents because the specific description used in this chain is not included in the act of quitclaim description. What Rectangle sold in 1929 was the Packard Claim and the Lacey Claim, according to plaintiffs. The quitclaim deed under which Rectangle acquired included the following verbiage in the description that relates to T 21 S, R 31 E:
"A certain tract of land situated on the right bank of the Mississippi River * * and lands lying below the Jump in T 21 S, R 31 E; * * *"
and
"A certain tract of land situated on the right bank of the Mississippi River designated as * * * T 21 S, R 31 E, situated in the Parish of Plaquemines, State of Louisiana."
and
"A certain tract of land situated on the right bank of the Mississippi River and designated as all of Section 30 E of Tiger Pass, all of Section 31 E of Tiger Pass, Section 32, T 21 S, R 31 E; * *"
The quitclaim deed from Rectangle to Rose in 1929 did not include the verbage used in the Leovy chain; however, the descriptive language concerning property to be conveyed in T 21 S, R 31 E reads:
"All of the land situated in the Parish of Plaquemines in the Southeastern Land District of the State of Louisiana, West of the Mississippi River included within the limits of Township Twenty-one (21) South, Range Thirty-one (31) East * *"
"And particularly including and quitclaiming and conveying all of the right, title and interest of Charles Collins Buck, Louisiana Agricultural Corporation and Rectangle Ranche Company in and to the following property, to wit: "* * * and lands lying below the Jump in T. 21 S., R. 31 E."
"It being the intention to convey by this quitclaim all of the right, title and interest of these vendors in and to all of the lands situated in Townships 21 South, *359 Range 31 East * * * title to which or interest in which is vested in any or all of them, whether same are fully and correctly described herein or not, excepting the lands hereinabove specifically excepted."
Sections 30, 31 and 32 in T 21 S, R 31 E are not specifically excepted as not included in the conveyance.
Although the exact verbiage used heretofore to convey the Leovy Patents is not included in the quitclaim deed, the vendors unequivocably state they intend to convey all their respective interests "in and to all the lands situated in Township 21 South, Range 31 East whether or not the lands are fully and correctly described."
Because Rectangle was the record owner of the portions of Sections 30, 31 and 32 now in dispute at the time it conveyed all its interests in this Township to Rose, according to the clear language of the quitclaim, Rectangle's interest in these sections was included in the transfer.
This conclusion conforms to the holding in Williams v. Bowie Lumber Co., 214 La. 750, 38 So.2d 729. In that case the vendor sold 19 specifically described tracts of land and "* * * all the property owned by him in Lafourche Parish." The vendor's heirs attempted to introduce evidence to establish what property vendor actually intended to convey by the omnibus description of "all my lands" in Lafourche Parish, but the Court rejected it. The Court refused to go beyond the four corners of the contract to interpret the vendor's intent, when the document unequivocably stated the vendor's intent.
The same reasoning applies in this case. Even though the description previously employed in the Leovy patent transfers was not incorporated in the quitclaim, we think this is unimportant in view of vendors' express intent to convey all their interest in all the lands they owned at the time in T 21 S, R 31 E.
An alternative contention of plaintiffs is that if the quitclaim was sufficient to transfer Rectangle's interest in Sections 30, 31 and 32, the conveyance was only binding between the parties since the property description is too vague to apprise third parties to the deed what property in Township 21 South, Range 31 East was conveyed. Plaintiffs all claim a third-party status.
Defendants urge that the description was adequate to constitute notice to third parties. The trial court agreed with this position primarily because the record discloses defendants were able to take possession of the Sections in dispute after buying the property.
As we stated previously, there appear to be fourteen sections of T 21 S, R 31 E downriver or partially downriver from the Jump. The sections at issue are intersected by various waterways, i. e., Tiger Pass and Grand Pass (both flowing in a north-south direction) and Mercantile Canal, flowing generally in an east-west direction. This township apparently was subdivided into sections and mapped long before the year 1900.
Defendants do not claim ownership of the entire township located below the Jump; however, they assert the description under which they acquired title clearly located the property conveyed. Essentially, the description reads: All lands in Township 21 South, Range 31 East, lying below the Jump and belonging to vendors.
In our view this description falls far short of what our law deems adequate to apprise third parties of the land conveyed. It is well established that either (1) the written description in the deed should enable one to identify and locate the property sold or (2) a map, plat or prior deed should be included by reference in the description that fixes the boundaries if the writing itself does not set this out. Daigle v. Calcasieu Nat'l Bank in Lake Charles, 200 La. 1006, 9 So.2d 394; Baldwin v. Arkansas-Louisiana *360 Pipe Line Co., 185 La. 1051, 171 So. 442.
While the description in the Rectangle-Rose quitclaim deed binds the parties thereto, insofar as third parties are concerned it is fatally defective because the verbiage, "lands lying below the Jump in T 21 S, R 31 E," covers large acreage in the township in addition to Sections 30, 31 and 32. Having reached this conclusion, we must next determine whether plaintiffs are entitled to a third-party status. For plaintiffs to prevail, they must do so as third parties to the Rectangle-Rose deed, for, as was pointed out in Williams v. Bowie Lumber Co., supra:
"* * * as between the parties to the contract and their privies, a sale of real property by an omnibus designation is just as effective and binding as though the lands were specifically described."
To discuss the question of third-party status, we must recount the transactions and conveyances under which plaintiffs assert ownership to the property. Plaintiffs fall into one of the three following categories:
1. Heirs of Charles Collins Buck and Their Attorneys.
Charles Collins Buck owned all the stock of Rectangle Ranche Company when he executed the quitclaim deed to Rose and when he died. The Buck heirs successfully overturned what purported to be his will wherein he had named one Ada Pautsch as his sole heir. In this litigation (Succession of Buck, 208 La. 556, 23 So.2d 215), he was represented by Dart, Guidry and Price, a law firm which earned a 50% interest in the Buck heirs' assets from the succession for their successful representation. Among the assets of the estate was all the stock in Rectangle Ranche Company.
In March, 1949 Rectangle Ranche Company was liquidated voluntarily. Its assets were distributed to the heirs of C. C. Buck and their attorneys in proportions equal to each respective individual stockholder's share in the estate. Included in the act of transfer and liquidation as an asset was the property to which plaintiffs assert title in this litigation. Within 18 months of Rectangle's liquidation, the Buck heirs and their attorneys sold this property, together with other non-revenue producing properties, to newly incorporated Cattle Farms, Inc. The consideration for the transfer was that each vendor received stock in Cattle Farms, Inc. in proportion to the interest each held in the land sold to the new corporation. For example, a vendor with an undivided 10% interest in the land received 10% of all the stock issued by Cattle Farms.
This first group of plaintiffs assert they have a third-party status to the Rectangle-Rose quitclaim deed either as heirs of C. C. Buck, or stockholders of Rectangle, or stockholders of Cattle Farms, Inc.
2. Abstractors whose title work developed the basis of plaintiffs' claim to ownership in this suit.
Abstractors, Andrew S. Zengel, John T. Wogan and John Frawley (now deceased whose interest is pursued in this cause by his daughter Mae Rita Frawley) each acquired an undivided 5% interest in the property in a sale from Cattle Farms, Inc. in 1953. The consideration for the transfer was recited in the deed to be the cash value for services rendered to the stockholders of Cattle Farms. Performance by the abstractors dated back to July, 1950 when they entered into an agreement with the Buck heirs and their attorneys to point out to them properties in Plaquemines Parish in which they might claim an interest. For each tract discovered, the Buck heirs and their attorneys agreed to convey to each of the three abstractors a 5% interest. Although the agreement was confected in 1950, the abstractors' interests were not conveyed until 1953 and between the time of the original agreement and the time of the act of sale, the lands now in *361 dispute had been sold by the Buck heirs and their attorneys to Cattle Farms, Inc. Therefore, Cattle Farms, Inc. was the vendor in the 1953 sale.
3. Attorneys of Cattle Farms, Inc.
In the same sale in 1953 described above, Taylor Caffery and Louis Guidry each became transferees of an undivided 5% interest and 2½% interest, respectively, in this property. They received their interests for legal services rendered to Cattle Farms, Inc. Both Caffery and Guidry are included in the first group described, i. e., stockholders of Rectangle who derived their stock from the Succession of C. C. Buck; however, in addition, they claim a superior third-party status as transferees of Cattle Farms, Inc.
Through these various conveyances, all registered in Plaquemines Parish and all containing the property description designated by plaintiffs as the Leovy patents, plaintiffs claim they are third parties to the Rectangle-Rose deed and therefore not bound by the omnibus description in the quitclaim.
Defendants have pleaded all plaintiffs are estopped from asserting title to this property for various reasons to be discussed hereinafter.

Estoppel of the Buck Heirs
Defendants plead the Buck heirs may not assert title adverse to the assigns of C. C. Buck's vendees under the doctrine of estoppel by warranty. Since C. C. Buck appeared individually as a vendor in the Rectangle-Rose sale, defendants urge, his heirs in accepting his succession unconditionally are bound by his obligations. One such obligation to the assigns of Rose is to warrant peaceful possession of the property conveyed by C. C. Buck. This warranty would preclude the Buck heirs from acquiring a third-party status through a recorded judgment of possession. The trial court maintained the defense of estoppel by warranty, relying on the decisions in Boyet v. Perryman, 240 La. 339, 123 So.2d 79; Louisiana Canal Company v. Leger, 237 La. 936, 112 So.2d 667; Williams v. Bowie Lumber Co., supra; Arnett v. Marshall, 210 La. 932; 28 So.2d 665; and Giffing v. Taft (on rehearing), 151 La. 442, 451, 91 So. 832, 835.
Plaintiffs contend these decisions are inapposite to the instant case because they all concern sales wherein the vendor warranted title. They argue the express warranty granted by the vendor is a contractual obligation the deceased's heirs must assume in accepting his succession. But plaintiffs point out the Rectangle-Rose deed was a quitclaim deed that specifically excluded any warranty to vendee.
We agree with plaintiffs in this contention. Therefore, we must determine whether the heirs of a vendor, who transfers title by quitclaim deed, are precluded from asserting an adverse title to their ancestor's vendee.
In Gary v. Bullock, 206 La. 231, 19 So.2d 120, the Supreme Court held the heirs of a quitclaim vendor were estopped from asserting adverse title against his vendees. The rationale of that case differs from the authorities cited by the trial judge in maintaining the estoppel by warranty defense. There the Court stated:
"The general rule is that all parties to a deed, and those claiming through them, are bound by the recitals in it intended as admissions of fact and legitimately appertaining to its subject matter * *
"Revised Civil Code, article 2236 states:
"The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, * * *"
In applying the doctrine of estoppel, the Court stressed the quitclaim was given by authentic act and seemed to base its result primarily upon the binding nature of recitals contained in authentic acts.
*362 Although the Rectangle-Rose deed was a private act, it was duly acknowledged before a Notary Public by C. C. Buck in his individual capacity and as representative of both vendor corporations. Therefore, the rationale of Gary v. Bullock, supra, supports the application of the doctrine of estoppel to the Buck heirs, in view of this provision of the Civil Code:
"Article 2242An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act." (Emphasis supplied).
In addition, sections of the Civil Code relating to successions and sales support this conclusion. When the Buck heirs filed suit to contest the validity of the will of Charles Collins Buck in their capacity as legal heirs, this action constituted an unconditional acceptance of his succession. (LSA-C.C. Article 988 and Soule v. West, 185 La. 655, 170 So. 26). By virtue of their unconditional acceptance, the heirs obligated themselves to discharge all the debts and assume all the obligations of the estate. (LSA-C.C. Art. 1423).
The obligation C. C. Buck individually owed to his vendee Rose, and to the latter's assigns, was to refrain from any act that would challenge that vendee's ownership of the former Buck interests in all land owned by Buck in T 21 S, R 31 E when the quitclaim was executed. Even though the quitclaim by its very nature is a deed that expressly excludes a vendor's warranty, nonetheless the Civil Code binds the vendor to a legal warranty in Article 2504, which reads:
"Although it be agreed that the seller is not subject to warranty, he is however, accountable for what results from his personal act; and any contrary agreement is void."
This obligation imposed by law devolved upon the Buck heirs when they unconditionally accepted the succession of C. C. Buck.
Therefore, we conclude the doctrine of estoppel by warranty effectively bars the Buck heirs from asserting an interest in the property adverse to defendants.
Estoppel of the Buck Heirs and Their Attorneys as Stockholders of Rectangle Ranche Company and/or Cattle Farms, Inc.
The Buck heirs and their attorney's claim a third-party status as stockholders of Rectangle Ranche Company. As we have previously stated, these plaintiffs acquired all the stock of Rectangle as one of the assets of the Estate of C. C. Buck. In view of the fact that this corporation was one of the vendors in the Rectangle-Rose quitclaim deed, appearing through its duly authorized agent, Charles Collins Buck, we hold that the corporation cannot deny or challenge any obligations it contracted thereunder. Even though the stockholders in the corporation changed after the death of C. C. Buck, we cannot conclude a change in ownership of the corporate stock acted to relieve the corporation of liabilities previously incurred by it.
The quitclaim deed transferred all the interest of Rectangle Ranche Company in and to all lands in T 21 S, R 31 E in 1929. This corporation, between 1929 and 1949, never reacquired interest to any property within this township. Having decided the quitclaim deed conveyed any interest in what plaintiffs describe as the Leovy patents, we cannot perceive how future stockholders reacquired the property divested by the corporation merely because the stock ownership changed.
Nor do we agree that plaintiffs could confer upon themselves a third-party status by virtue of the recorded transfers they rely on, namely, the distribution of Rectangle's assets to the Buck heirs and their attorneys and the subsequent transfer by these individuals of their interest in the property to Cattle Farms, Inc. From the *363 record it is evident that these conveyances were made for the purpose of vesting in plaintiffs, as stockholders of Cattle Farms, Inc., a third-party status they did not have as stockholders of Rectangle Ranche Company. After all the papershuffling was concluded, plaintiffs owned stock in Cattle Farms, Inc. in identical proportions to their previous ownership in Rectangle Ranche Company.
A similar attempt to create a third-party status was discussed in Keller v. Haas, 202 La. 486, 12 So.2d 238. In that case W. D. Haas bought the interest of his co-owner at a tax sale in 1915. In 1927, W. D. Haas sold the property to the Haas Investment Company, a corporation in which he was principal stockholder. In refusing to confer upon the corporation a third-party status, the Court reasoned:
"It is contended that the Haas Investment Company, Inc. is an innocent purchaser of the property on the faith of the public records and that it is not affected by the unregistered equities of the co-owners.
"It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility. Lindstrom v. Sauer, La.App., 166 So. 636; Alliance Trust Co. v. Streater, 182 La. 102, 161 So. 168; Superior Oil Co. v. Baltar, 181 La. 908, 160 So. 626; Wilson v. Lagasse, 12 La.App. 704, 127 So. 17; Heard v. Monroe Sand & Gravel Co., 9 La.App. 568, 121 So. 642; State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033.
"Under the allegations in the plaintiffs' petition, the business carried on by the corporation is nothing more than a continuation of Haas's business by the merger of his private business into a corporation of which he is the managing head and practically the sole owner. Under such circumstances, Haas is not permitted to cloak himself behind the corporate entity to shield himself from responsibility. The corporation would therefore be bound to the same extent that Haas himself is bound."
Under the authority of Haas, we conclude the stockholders of Cattle Farms, Inc. are bound to the same extent as they were in their capacity as stockholders of Rectangle. Thus they are not entitled to a third-party status but are bound by the recitals of the quitclaim deed executed by the corporation for a valid consideration 20 years before the corporation was liquidated.

Estoppel of the Abstractors Frawley, Wogan and Zengel
The facts upon which this plea of estoppel is based are these:
In 1947, defendant J. S. Abercrombie purchased the interest of one L. G. Welsh in an undivided interest in the property here in litigation and lands in six other townships. The following year Abercrombie ordered an abstract from the Frawley Title Company covering all these lands, which, when completed, consisted of more than 8,000 pages. For these services J. S. Abercrombie paid the Frawley Title Company more than $10,000. The certificate page of the abstract was co-signed by John J. Frawley and G. T. Wogan, both attorneys and abstractors. One of the captions in this abstract describes the property in Sections 30, 31 and 32 of T 21 S, R 31 E with the same verbage plaintiffs refer to as the description in the Leovy patents.
Early in 1950, Frawley approached Taylor Caffery, who represented the Buck heirs, and proposed that he, Guidry and Zengel, as experts in abstracting titles in Plaquemines Parish would search for titles to lands belonging to the Buck heirs in exchange for a 5% interest to each abstractor for any such land discovered by them. This agreement was reduced to writing in the contract of July, 1950 previously described. The Buck attorneys insisted upon *364 a provision in the contract that recordation thereof would ipso facto terminate the agreement. Guidry, one of the attorneys, explained the reason for this provision as follows:
"Q. You will admit, won't you, Mr. Guidry, that this provision against recordation of the contract with the abstractors was included in that chart (contract) with the expressed purpose preventing the fact that said a contract had been entered coming to the attention of the Court?
"A. How can I assume such a thing, because I don't know. I think I testified before that I believe that the reason it was there was because Benjamin W. Dart at the time was in charge of most of the affiars of these corporations or, rather, the Buck heirs and so on. He is a very meticulous lawyer, a very technical and sometimes, I thought, too very technical. A law suit was had in the Parish of Lafourche, in which they had such an agreement, and that the parties were supposed to furnish the information and so on, to enable the recovery of lands, and they had gone behind their backs and recorded this instrument, and then when the case came to the Supreme Court, Judge Win (Wynne) Rogers had publicly said that it was just a scheme to take the land away from these people; and now whether he had a right to say such a thing, it seems to me that anybody can recover land anyway they want, if it's legal. But it so prejudiced the Court that Ben Dart, I think, insisted when he had this agreement that he didn't want it recorded. That's what I think I testified originally.
"Q. Therefore, the answer is that as insofar as your firm was concerned this provision was included in the contract to prevent the fact that the contract had been entered into coming to the attention of the Court?
"A. Maybe not only the Court; maybe other people.
"Q. But also the Court?
"A. Also the Court, should we go into litigation.
"Q. And, specifically, the Court, in view of what you have recounted about Mr. Dart's concern about the Supreme Court Justice's reactions as to this type contract?
"A. That's correct."
After this agreement was concluded, Caffery and Zengel researched further the records of Plaquemines Parish using as a starting point the chart and abstract prepared by Frawley and Wogan for defendant J. S. Abercrombie. Defendants base their plea of estoppel as to the abstractors on the assertion that they have used the abstract for which defendant paid in excess of $10,000 to acquire an interest adverse to Abercrombie and initiate litigation that would divest him of this interest.
The Canon of Ethics of the Louisiana Bar Association are enumerated in Article XIV of the association's articles of incorporation (see LSA Vol. 21A, p. 164 et seq.). We quote those we think are pertinent to the instant case:
"Article 14
"The following canons of ethics shall govern the professional conduct of the members of this Association. The enumeration of particular duties herein shall not be construed as a denial of the existence of others equally imperative, though not specifically mentioned."
* * * * * *
"Art. 14, § 6: It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

*365 "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interest when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.
"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidence forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."
* * * * * *
"Art. 14, § 11: The lawyer shall refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client. * * *"
"Art. 14, § 37: It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them shall accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client without his knowledge and consent, and even though there are other available sources of such information. A lawyer shall not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client * * *"
Applying the quoted canons to the instant circumstances, we conclude there was a trust relationship between Abercrombie and his attorneys-abstractors, Frawley and Wogan, and they are now estopped from asserting a claim adverse to their former client based on services rendered on their client's behalf.
In no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client or former client. In Searcy v. Novo, 188 So. 490, at 498, the Court stated:
"The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor."
If an agent acquires an interest adverse to his principal as the result of a breach of trust, the interest so acquired is deemed under our law to accrue to his principal.
In McClendon v. Bradford, 42 La.Ann. 160, 7 So. 78, an attorney named Bradford formed a land company and acquired lands adverse to the interest of his clients. He subsequently sold the land and retained the proceeds. The Court stated in part:
"* * * But as the agent and attorney, at first, of the heirs of Rosanna Harris, and afterwards of the succession of McClendon, the land firm of R. H. and J. L. Bradford could not acquire any title adverse to the interest of either. The title they obtained to said Rosanna Harris land claim, and through which they had obtained patent, issued to them as owners of the same, must inure to the benefit of the parties whom they represented. It was a constructive trust, which they held for the benefit of their principal. * * *"
Under this theory, the abstractors Frawley and Wogan are now estopped from asserting an adverse interest against J. S. Abercrombie.
The record reflects that no such trust relationship existed between Andrew Zengel and the defendant. Therefore insofar as the abstractor Zengel is concerned, the estoppel *366 by constructive trust is not a valid defense as against his title.

Estoppel of Guidry and Caffery as Attorneys for Cattle Farms, Inc.
The collective 7½% interest in the property asserted by Guidry and Caffery stems from a sale from Cattle Farms, Inc. to these attorneys for services rendered. They claim, with respect to this sale, they are innocent purchasers entitled to rely on the public records.
We are of the opinion that they cannot claim this status because the only interest they acquired in this transfer was a litigious right. It was apparent to both attorneys when the sale was passed that title could be established in themselves only through litigation. Caffery and Guidry both owned stock in Cattle Farms, Inc. (and its predecessor Rectangle) through the Succession of C. C. Buck and were apprised of and participated in development of the claim to this land initiated by Frawley.
In Otis v. Texas Co., 153 La. 384, 96 So. 1, the Supreme Court held that one who purchases a litigious right does not acquire a third-party status. Instead, such purchasers acquire no greater interest than their vendor had. And in the instant case, for the reasons previously discussed, the vendor had no interest whatsoever.
Under the Otis decision, the abstractor Zengel is estopped from claiming a third-party status because he too acquired an interest only in a litigious right.
Having concluded none of the plaintiffs are entitled to a third-party status, we turn to plaintiffs' final contention. They assert that even if the Rectangle-Rose quitclaim deed is binding on them, they can trace ownership to the property through Tropico Manana Corporation. Plaintiffs acquired full ownership of this stock in the same proportions that each holds stock in Rectangle or Cattle Farms. At the time of his death, C. C. Buck owned all the stock in Tropico Manana and, as previously outlined in this opinion, plaintiffs acquired through his succession.
On December 15, 1952, Tropico Manana Corporation sold the property now in dispute to Cattle Farms, Inc. by warranty deed using the Leovy patents description. Tropico also had for its ancestor in title Rectangle Ranche Company. After Rose acquired from Rectangle, he sold to James D. Lacey, Trustee. The vendors in that act were Emile J. Rose, Robert L. Morris, Tambour Corporation and Tiger Pass Corporation, who sold lands in T 21 S, R 31 E, described as follows:
"All of the lands situated in the Parish of Plaquemines in the Southeastern Land District of the State of Louisiana West of the Mississippi River, included within the limits of Township 21 South, Range 31 East, * * *
* * * * * *
"And particularly including and quitclaiming and conveying all of the right, title and interest of these vendors in and to the following described property to-wit:
"* * * and lands lying below the Jump in T 21 S, R 31 E;
* * * * * *
"This quitclaim is made with the intention to convey thereby all the right, title and interest of the vendors in and to all the land situated in Township 21 South, Range 31 East."
The consideration flowing to vendors was the delivery by purchaser of two promissory notes in the amounts of $11,350.71 and $7,250.00. The deed recited that a vendor's lien was retained to inure to the use and benefit of any future holder or holders of said notes and the purchaser authorized executory process, confessed judgment in the act and waived appraisal of the real estate in the event seizure and sale would become necessary.
*367 On January 13, 1930 Lacey sold, by what is entitled an act of sale and quitclaim, the same property it purchased from Rose et al to Tropico Manana Corporation. The consideration for the sale was the assumption of the notes previously executed by Lacey in favor of the vendors, Rose, Morris, Tambour Corporation and Tiger Pass Corporation. The language relating to consideration in this act reads:
"It is hereby understood and agreed between the parties hereto that the purchaser herein, Tropico Manana Corporation, binds and obligates itself to discharge all of the obligations contained in said act of sale and quitclaim by Emile J. Rose Et Als, to the present vendor James D. Lacey, Trustee * * *" (Emphasis supplied).
It is clear from the language of this deed that the vendee assumed the same liabilities its vendors had contracted and was subject to the same terms and conditions under which Lacey took title.
The notes were never paid. Finally, Tambour Corporation, as holder of both notes, filed suit for $18,600.71 against Tropico Manana Corporation, seeking a judgment in that amount and recognition of its "mortgage." The prayer further sought a decree ordering the seizure and sale of the property at public auction to the highest bidder.
In the judgment, the Court, after recognizing defendant Tropico did in fact owe the amount plaintiff alleged, recognized the "mortgage" on the described land and ordered the property sold at public auction.
Subsequently Tambour bought this property at the sheriff's sale. The only part of the description different in the sheriff's sale as compared to the deed under which Tropico Manana acquired was the recitation of intention to quitclaim by the vendor.
Plaintiffs allege that title never passed to Tambour through the sheriff's sale because the Leovy patents were not described in the deed. Plaintiffs urge because a sheriff's sale is not a voluntary conveyance upon the vendor's part, the deed under which title passes must be strictly construed. They further assert that the trial judge erred in treating the sheriff's sale as a foreclosure, as opposed to a sale resulting from the issuance of a writ of fieri facias by an ordinary creditor with a money judgment. To support this position, plaintiffs point to the fact that Tropico was cited as a defendant in the suit and judgment was rendered against that corporation.
The facts do not support this position. When Tropico purchased, it did so by assuming all the obligations Lacey, its vendor, owed to Emile Rose et al. In doing so, the validity of the vendor's lien in favor of Rose et al was recognized, as well as the incorporation in the Rose-Lacey deed of (1) a confession of judgment, (2) a pact de non alienando and (3) waiver of appraisal in the event of a seizure.
Although the deed contained a confession of judgment which would have enabled Tambour to proceed via executiva, the holder of the notes chose to proceed via ordinaria, having Tropico Manana cited to defend the action. But the form of proceeding did not destroy the privilege plaintiff had against Tropico's property. Both in the petition and judgment, the vendor's lien was referred to as a mortgage. In addition to stating the amount of the indebtedness of Tropico Manana, the judgment decreed and recognized plaintiff's mortgage and described the property over which the judgment creditor held his privilege. The judgment further ordered a sale by public auction.
Thus, when the sheriff's deed was issued, the property conveyed was sold at the instance of a privileged creditor.
Plaintiffs assert the sheriff's deed is fatally defective in that it does not describe with particularity the property conveyed. It should be noted here that the sheriff's deed contains the same description under *368 which Tropico Manana acquired. For the sheriff's deed to have conveyed the property, plaintiffs assert it would have had to contain the following description:
All of Sections 30 and 31 East of Tiger Pass, all of Section 32, Township 21 South, Range 31 East.
As authority for this proposition, plaintiffs cite McDonough v. Gravier's Curator, 9 La. 531, wherein the Court declared a sheriff's sale null because the property was inadequately described. In that case the court was concerned primarily with the fact that a vague description of property made it difficult, if not impossible, to locate for the purposes of an appraisal before sale.
The cited case is distinguishable from the instant matter. In the McDonough case, an ordinary creditor holding a money judgment precipitated the sale. There was no question of enforcing a lien or privilege given on the property seized to secure payment of the debt. In this case, the property seized and sold is the same property Tropico had acquired subject to the vendor's lien. In the deed where the privilege was given appraisal was waived. The interest Tropico acquired in its act of purchase is the same interest transferred by the sheriff's deed. At the time the sale was made, the Code of Practice was in effect. The pertinent articles defining what actually was conveyed by the sheriff's sale are these:
Article 690"The adjudication thus made has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged."
Article 725.25"The sale on seizure is made at public auction by the sheriff or other officer charged with the execution of the judgment."
Article 725.27"This sale on execution transfers the property of the thing to the purchaser as completely as if the owner had sold it himself; but it transfers only the rights of the debtor such as they are."
See also Hite v. Charbonnet, 193 La. 581, 192 So. 64 and cases cited therein.
Therefore, when Tropico Manana sold to Cattle Farms, Inc. they had nothing left to convey. We conclude there is no merit in plaintiffs' contention they acquired valid title from Tropico Manana Corporation.
Our conclusions herein make it unnecessary to consider plaintiffs' contentions with respect to the procedural classification of their real action, in view of the fact they would not be entitled to relief whether this were treated as an action to remove clouds from title, an action to establish title or a judgment declaring their ownership of the tract.
For the reasons assigned the judgment appealed from, which declares the defendants to be true and lawful owners of the following described property:
All of Section 30 East of Tiger Pass, all of Section 31 East of Tiger Pass, all of Section 32, all in Township 21 South, Range 31 East, in Plaquemines Parish, Louisiana.
is affirmed; plaintiffs-appellants to pay all costs of these proceedings.
Affirmed.